07-3660-cr
United States v. Gamez

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

_____

August Term, 2008

(Argued: September 23, 2008                                        Decided: December 5, 2008
                                                                  Opinion filed: August 20, 2009)

Docket No. 07-3660-cr(L)

_____

United States of America,

*Appellee,*

-*v.*-

Santos Gamez, also known as Robert Evangelista, also known as Santos[*] Diaz,

*Defendant-Appellant.*

_____

BEFORE:      WESLEY, HALL and GIBSON,[**] *Circuit Judges.*

_____

Appeal from the judgment of the United States District Court for the Southern District of New York (Jones, J.), sentencing Defendant-Appellant Santos Gamez principally to thirty months imprisonment and three years of supervised release following his January 10, 2007 guilty plea to illegally reentering the United States after deportation for an aggravated felony, in violation of 8 U.S.C. § 1326(a). We hold that criminal possession of a weapon in the second degree, in violation of N.Y. Penal Law § 265.03, is not a crime of violence for the purposes of Sentencing Guidelines § 2L1.2(b)(1)(A)(ii). We vacate the sentence and remand to the district court for resentencing.

_____

[*] The Clerk of Court is directed to amend the official caption in this case to conform to the above caption ("Sa<u>m</u>tos-Diaz" should become "Santos-Diaz").

[**] The Honorable John R. Gibson, United States Court of Appeals for the Eighth Circuit Court, sitting by designation.

EDWARD S. ZAS, Appeals Bureau, Federal Defenders of New York, Inc., New York, New York, *for Defendant-Appellant* Gamez.

SHARON E. FRASE, Assistant United States Attorney, Of Counsel (Daniel A. Braun, Assistant United States Attorney, of Counsel, *on the brief*), for Michael J. Garcia, United States Attorney, Southern District of New York, New York, New York, *for Appellee.*

———————————————

PER CURIAM:

Defendant-Appellant Santos Gamez ("Gamez") appeals from the district court judgment sentencing him to thirty months imprisonment, three years of supervised release and an assessment of $100, following his January 10, 2007 guilty plea to illegally reentering the United States after deportation for an aggravated felony, in violation of 8 U.S.C. § 1326(a). Gamez was convicted in 2000 in state court of a violation of N.Y. Penal Law § 265.03 for possessing, without authorization, a loaded .32 caliber firearm and four live rounds of ammunition.[1] On appeal, Gamez argues that the district court erred when it increased his base offense level by sixteen levels, pursuant to the United States Sentencing Guidelines ("Guidelines") § 2L1.2(b)(1)(A)(ii), after determining that his prior New York State felony conviction was a "crime of violence." According to Gamez, a "crime of violence," as defined in the Commentary accompanying the Guidelines' § 2L1.2(b)(1), requires that the offense of which he was previously convicted have as an element the "use, attempted use, or threatened use of physical force" and that it cannot encompass an offense for which the element related to physical force

---

[1] Gamez argued at his sentencing before the district court that he was not charged with an assault or aggravated assault in connection with the 1998 incident because he was involved in a fight and was acting in self defense.

2

requires only proof of intent to use it. We agree, and for the reasons that follow we vacate the sentence and remand for resentencing.

## BACKGROUND

On January 20, 2007, Gamez, a Honduran citizen, pleaded guilty to unlawful reentry to the United States after deportation in violation of 8 U.S.C. § 1326(a). Gamez had been removed from the United States in August 2003 because in June 2000 he had pleaded guilty to criminal possession of a weapon in the second degree in violation of N.Y. Penal Law § 265.03 which constituted an aggravated felony, a removable offense under the Immigration and Nationality Act. According to the Presentence Report ("PSR"), prepared by the Probation Office in connection with Gamez's illegal reentry conviction, which incorporated facts from the state presentence report prepared in connection with Gamez's 2000 guilty plea to the state offense, Gamez was arrested in 1998 after shooting one person in the face and one in the stomach. When he was arrested, Gamez was carrying a loaded .32 caliber firearm, which contained four live rounds of ammunition. He pleaded guilty to a violation of N.Y. Penal Law § 265.03 and was sentenced to forty-two months imprisonment. In August 2003, Gamez was transferred into the custody of the Immigration and Customs Enforcement and removed to Honduras. Gamez later returned to the United States and was charged with unlawfully reentering the United States, to which he pleaded guilty and was sentenced to thirty months imprisonment.

According to the PSR prepared for the unlawful reentry conviction at issue, under U.S.S.G. § 2L1.2(a), Gamez's base offense level was eight. Concluding that Gamez's prior criminal possession of a weapon conviction was for a "crime of violence," the PSR recommended a sixteen-level increase pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii). It also

3

recommended a three-level decrease for acceptance of responsibility based on Gamez's plea of guilty to the unlawful reentry charge. The resulting total offense level was twenty-one. The parties voiced no objections to the facts contained in the PSR, and the court determined it was undisputed that Gamez's total offense level was twenty-one.[2] While the PSR indicated that Gamez's criminal history was seven points, placing him in criminal history category IV, the district court determined that the PSR was ambiguous about whether Gamez's illegal reentry crime was committed less than two years after he was released from imprisonment on his 2000 conviction and computed Gamez's criminal history at six points, thus placing him in criminal history category III. With a total offense level of twenty-one and criminal history category III, Gamez's Guidelines range was forty-six to fifty-seven months imprisonment.

At the sentencing hearing, the district court adopted the facts from the PSR and concluded, after considering the Guidelines range and the factors under 18 U.S.C. § 3553(a), that a non-Guidelines sentence was appropriate. The district court found it significant that the defendant returned to the United States to work, rather than to obtain money through criminal activity, and the court credited Gamez's statement that he would not return illegally to the United States in the future. It imposed a thirty-month sentence of imprisonment, sixteen months below the low end of the applicable Guidelines range.

---

[2] Although the district court did not explain how it reached the total offense level of twenty-one, the district court's calculation corresponds to that of the PSR.

**DISCUSSION**

**Standard of Review**

We review *de novo* the district court's interpretation of the Guidelines regarding whether a particular crime is a "crime of violence." *See United States v. Rubenstein*, 403 F.3d 93, 99 (2d Cir. 2005).

Gamez argues for the first time on appeal that the district court erred when it determined that his New York conviction for criminal possession of a weapon in the second degree was a "crime of violence" under the Guidelines, thus subjecting him to a sixteen-level increase of his base offense level. It is undisputed that Gamez did not raise this issue at sentencing, nor did he object to the court's calculation of the total offense level. We therefore review the district court's decision for plain error. *See* Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 732 (1993). Under the plain error standard, "[t]here must be an 'error' that is 'plain' and that 'affect[s] substantial rights.'" *Id.* Moreover, courts of appeals should only exercise their discretion to correct the forfeited error pursuant to Fed. R. Crim. P. 52(b) when the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (citing *United States v. Young*, 470 U.S. 1, 15 (1985)) (internal quotation marks omitted). This Court has stated that the plain error doctrine should not be applied stringently in the sentencing context, where the cost of correcting an unpreserved error is not as great as in the trial context. *See United States v. Williams*, 399 F.3d 450, 456-57 (2d Cir. 2005).[3]

_____

[3] The government invites us to reject the "relaxed" plain error standard here because, it contends, that standard "is not applied as a general matter to all unpreserved sentencing claims" and Gamez's "failure to object at any stage of the sentencing proceeding to the proposed application of a well-established Guidelines enhancement does not warrant application of any type of 'relaxed' plain error standard." We do not need to address the government's contention

5

**Whether There Was an Error**

"Deviation from a legal rule is 'error' unless the rule has been waived." *Olano*, 507 U.S. at 732-33. The Guidelines provide a base offense level of eight for unlawfully entering or remaining in the United States. *See* U.S.S.G. § 2L1.2(a). The specific offense characteristic provides that an increase by sixteen levels applies "[i]f the defendant previously was deported, or unlawfully remained in the United States, after—(A) a conviction for a felony that is . . . (ii) a crime of violence." U.S.S.G. § 2L1.2(b)(1)(A)(ii). The commentary for § 2L1.2(b)(1) of the Guidelines provides the following definition for "crime of violence":

> "Crime of violence" means any of the following: murder, manslaughter, kidnaping, aggravated assault, forcible sex offenses, statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, *or any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another*.

U.S.S.G. § 2L1.2 cmt. n.1(B)(iii) (2006) (emphasis added). Because criminal possession of a weapon is not an enumerated offense, to constitute a crime of violence under this definition, it must have "as an element the use, attempted use, or threatened use of physical force against the person of another." *See id.*

At the time of Gamez's guilty plea in 2000, N. Y. Penal Law § 265.03[4] provided:

> A person is guilty of criminal possession of a weapon in the second degree when, with intent to use the same unlawfully against another: (1) He possesses a machine-gun; or (2) He possesses a loaded firearm; or (3) He possesses a

---

on this issue because we reach the same result under either standard.

[4] Effective December 1, 2005, a person also violates the second degree offense when he possesses five or more firearms, N.Y. Penal Law § 265.03 (2) (McKinney 2005), and, effective November 1, 2006, when he possesses a loaded firearm outside his home or place of business, N.Y. Penal Law § 265.03 (3) (McKinney 2006).

6

disguised gun. Criminal possession of a weapon in the second degree is a class C felony.

Therefore, to establish criminal possession of a weapon in the second degree, the prosecution must demonstrate, beyond a reasonable doubt, that a person: (1) possessed one of the described weapons; and (2) had intent to use such weapon unlawfully against another. *See* N.Y. Penal Law § 265.03 (McKinney 2000). As the New York Court of Appeals has instructed: "The essence of the illegal conduct defined in sections 265.01-265.05 of the Penal Law is the act of possessing a weapon unlawfully. . . . Once the unlawful possession of the weapon is established, the possessory crime is complete and any unlawful use of the weapon is punishable as a separate crime." *People v. Almodovar*, 62 N.Y.2d 126, 130 (1984) (internal citations omitted).

Because unlawful possession of a firearm under N.Y. Penal Law § 265.03 does not include as an element any unlawful use, attempted use or threatened use of physical force against another person, Gamez is correct that intent to use a gun unlawfully against another, an element of the offense for which he was convicted, "cannot be equated with the actual, attempted or threatened use of physical force, which all involve some affirmative conduct beyond the mere possession of a gun." *See id.* That Gamez actually used the firearm he possessed to shoot two persons is irrelevant because the applicable Guidelines definition of "crime of violence" in the context of immigration offenses requires that the statutory offense of which the defendant was previously convicted have "as an element the use, attempted use, or threatened use of physical force." New York State second-degree weapon possession does not require proof of any of these elements.

7

The government contends the district court did not err in its calculations because no courts have "considered whether courts sentencing illegal reentry defendants previously convicted under [N.Y. Penal Law] § 265.03 should look beyond the statutory definition to the underlying facts of the offense" and "the analogous case law that does exist supports application of the 16-level enhancement in Gamez's case." According to the government, N.Y. Penal Law § 265.03 does not differ materially from the Iowa statute at issue in *United States v. Gomez-Hernandez*, 300 F.3d 974 (8th Cir. 2002), because "possessing a loaded firearm with intent to use it against another certainly can, and almost invariably will, encompass actions where the perpetrator is manifesting that intent by using, attempting to use, or threatening the use of force." We are not persuaded.

In *Gomez-Hernandez,* the court determined, based on the underlying conduct rather than the statutory definition of the predicate state offense, that the defendant committed a crime of violence. *Id.* at 980. At the time Gomez-Hernandez was sentenced, Iowa Code § 708.8, under which he was convicted, provided: "A person who goes armed with any dangerous weapon with the intent to use without justification such weapon against the person of another commits a class 'D' felony." Gomez-Hernandez argued that "going armed with intent is not a crime of violence under the amended guideline because '[i]t is possible to commit this offense without using, attempting to use, or threatening to use force against the person of another.'" *Gomez-Hernandez.* 300 F.3d at 980. Relying on two decisions of the Iowa Supreme Court, *State v. Ray,* 516 N.W.2d 863, 865 (Iowa 1994), and *State v. Slayton,* 417 N.W.2d 432, 434 (Iowa 1987), the Eighth Circuit applied a modified categorical approach to analyzing the Iowa statute "because it is clear that [Iowa Code] § 708.8 includes at least some offenses that involve an actual, attempted, or

8

threatened use of force." *Gomez-Hernandez.* 300 F.3d at 980. A portion of the Iowa Supreme

Court's discussion in *Ray* is key to understanding both the distinction between "going armed . . .

with intent" under § 708.8 of the Iowa Code and the possession offense under N.Y. Penal Law §

265.03 and also the reason the Iowa provision can be read as constituting "an attempted use of

physical force." *See Gomez-Hernandez*, 300 F. 3d at 980. In *Ray*, discussing the elements of the

crime the court stated: "As for 'going' armed, we believe *the term necessarily implicates proof of*

*movement*. That requirement is met here by uncontradicted testimony that Ray pursued Kelly

from inside the house onto the front lawn while carrying the knife." *Ray*, 516 N.W.2d at 865

(emphasis added). Similarly in *Slayton,* while the issue before the Iowa court was the sufficiency

and nature of the proof of the defendant's intent, the evidence as to the other elements of the

crime demonstrated that the defendant was moving through his victim parents' house carrying a

shotgun. *Slayton*, 417 N.W.2d at 435. There is no question, therefore, that in many

circumstances, the act of carrying a dangerous weapon and the act of moving while carrying it,

all done with the intent to use it against another person, can amount to an attempted use of

physical force against that person. Because the element of movement required to be proven

under the Iowa statute is absent in N.Y. Penal Law § 265.03, however, and because the required

act to be proven under New York law is only possession, which when "[o]nce . . . established, the

possessory crime is complete," *Almodovar*, 62 N.Y.2d at130, § 265.03 cannot in and of itself

involve an attempted use of physical force.

The government also argues that it is the entire course of Gamez's conduct, which

involves the use of force in his shooting of two persons, that manifests his intent to use a firearm

unlawfully against another. This argument also misses the mark because the manner in which

9

intent is manifested is irrelevant to our analysis since it is the conduct, *i.e.*, "the use, attempted use, or threatened use of physical force," and not the mental state, *i.e.*, "the intent to use" physical force, that operates to define a prior conviction as a "crime of violence" under U.S.S.G. § 2L1.2(b)(1)(A)(ii). Put another way, although it is possible that during the time Gamez committed the crime of possession of a weapon in the second degree he also committed another crime that would constitute a "crime of violence," he was not convicted of such crime, and under the applicable Guidelines provisions, it is only "a *conviction* for a felony that is . . . (ii) a crime of violence," U.S.S.G. § 2L1.2 cmt. n.1(B)(iii) (emphasis added), that will yield the sentencing enhancement at issue here.

For the reasons articulated, we hold that a violation of N.Y. Penal Law § 265.03 for which Gamez was convicted is not a crime of violence as defined in U.S.S.G., § 2L1.2(b)(1)(A)(ii) because it is not an offense that includes "as an element the use, attempted use, or threatened use of physical force against the person of another." Accordingly, the determination to the contrary was error.

**Whether the Error Was Plain**

A "court of appeals cannot correct an error pursuant to Rule 52(b) unless the error is clear under current law." *Olano*, 507 U.S. at 733. "Whether an error is 'plain' is determined by reference to the law as of the time of appeal." *United States v. Weintraub*, 273 F.3d 139,152 (2d Cir. 2001) (citing *Johnson v. United States*, 520 U.S. 461, 468 (1997)). Typically, we will not find plain error "where the operative legal question is unsettled." *Id.*

The settled law requires the sentencing courts to take a categorical approach in determining whether a prior conviction is a crime of violence for the purposes of sentencing

10

enhancement except in "a narrow range of cases where a jury was actually required to find all the elements of [an offense]." *See United States v. Taylor*, 495 U.S. 575, 602 (1990); *United States v. Gray*, 535 F.3d 128, 131 (2d Cir. 2008); *United States v. Rosa*, 507 F.3d 142, 151(2d Cir. 2007); *United States v. Jackson*, 301 F.3d 59, 61 (2d Cir. 2002), *abrogated on other grounds by Chambers v. United States*, 129 S. Ct. 687 (2009). "The nature of the prior offense of conviction is controlled by the statutory definition of the offense." *United States v. Galicia-Delgado*, 130 F.3d 518, 520 (2d Cir. 1997).

We reject the government's invitation to rely on the rule applied in *United States v. Maldonado-Lopez*, 517 F.3d 1207, 1209 (10th Cir. 2008), which states that "[i]f the statute is ambiguous, or broad enough to encompass both violent and nonviolent crimes, a court can look beyond the statute to certain records of the prior proceedings," including "charging papers, judgment of conviction, plea agreement or other statement by the defendant for the record, presentence report adopted by the court, and findings by the sentencing judge." We note that the Tenth Circuit in *United States v. Zuniga-Soto*, 527 F.3d 1110, 1113 (10th Cir. 2008) abandoned its *Maldonado-Lopez* rule, a rule the government urges us to apply here, when it held that the Guidelines "§ 2L1.2's 'as an element' language limits the scope of a proper inquiry to the statutory definition of the prior offense and does not permit judicial examination of the facts behind conviction." Like the *Zuniga-Soto* court, we believe that the categorical approach is the one that must be applied in determining whether a conviction is a crime of violence for the purposes of the Guidelines' § 2L1.2(b)(1)(A)(ii) sentence enhancement. The district court, therefore, should have limited its inquiry to the elements of the state crime for which Gamez had been convicted. Because the categorical approach limiting the court's inquiry to the statutory

11

elements of the conviction is a well settled law, and the district court went beyond a categorical approach to consider the factual circumstances of the crime of conviction, we must find that the district court's error here was plain.

**Whether the Error Affects Substantial Rights**

To affect a defendant's substantial rights, "the error must have been prejudicial: It must have affected the outcome of the district court proceedings." *Olano*, 507 U.S. at 734.

When it sentenced Gamez, the district court applied the Guidelines range of forty-six to fifty-seven months imprisonment, based on the total offense level of twenty-one. According to Gamez, had the district court not applied the enhancement for a crime of violence, his total offense level would have been, at most, thirteen based on: (i) a base offense level eight, U.S.S.G. § 2L1.2(a); (ii) an eight level increase for his N.Y. Penal Law § 265.03 conviction, which likely qualifies as an aggravated felony, U.S.S.G.§ 2L1.2(b)(1)(C); and (iii) a three level reduction for acceptance of responsibility, U.S.S.G. § 3E1.1(a). At a total offense level of thirteen and Criminal History Category III, Gamez's Guidelines range would have been eighteen to twenty-four months. Thus, Gamez's substantial rights were affected by the district court's error because, although he was given a below-Guidelines sentence, the advisory Guidelines range, which was the starting point for the district court's determination of the sentence it imposed, would have been significantly lower.

The final question in the plain error analysis is whether "the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732 (internal quotation marks, alteration and citation omitted). Under the circumstances of this case, the error resulting in a significantly overstated advisory Guidelines range seriously affected the fairness

and integrity of the proceedings. The district court's determination of an appropriate sentence was influenced by the calculation of a total offense level that was at least half the level that would have obtained had the New York State conviction not been counted as a crime of violence.

**CONCLUSION**

For the foregoing reasons, we vacate Gamez's sentence and remand to the district court for resentencing.