EATON, Judge,
concurring:
Because of the unsettled state of the law, I agree that the admission into evidence of the autopsy report prepared by Dr. Jindrak did not constitute plain error. United States v. Gamez, 577 F.3d 394, 400 (2d Cir.2009) (“Typically, we will not find plain error ‘where the operative legal question is unsettled.’”) (citations omitted). I respectfully part company with the majority, however, on its conclusion that the autopsy report was “not testimonial” for purposes of the Confrontation Clause.
The majority reads recent Supreme Court cases as holding that “a statement triggers the protections of the Confrontation Clause when it is made with the primary purpose of creating a record for use at a later criminal trial.” This formulation, however, appears to place too much emphasis on future use in a criminal trial being the primary purpose for the creation of a testimonial statement. I would not find that this “primary purpose” is the common thread in the Supreme Court’s jurisprudence.[1] Rather, I would find that a testimonial statement is one having an evidentiary purpose, declared in a solemn manner, and made under circumstances that would lead a reasonable declarant to understand that it would be available for use prosecutorially.
The point of departure for this analysis is Crawford. As I read that case and those that follow it, there are three key considerations for determining if a statement is testimonial. First, “[tjestimony” is “a solemn declaration or affirmation made for the purpose of establishing or proving some fact.”[2] Crawford v. Wash *109 ington, 541 U.S. 36, 51, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) (citation and internal quotation marks omitted). Thus, at the time of its making, the statement must have an “evidentiary purpose.” Bullcoming v. New Mexico, — U.S. -, 131 S.Ct. 2705, 2717, 180 L.Ed.2d 610 (2011); Melendez-Diaz v. Massachusetts, 557 U.S. 305, 129 S.Ct. 2527, 2532, 174 L.Ed.2d 314 (2009). In other words, to be testimonial the declarant must make the statement to “prove past events.” Davis v. Washington, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). Statements relating ongoing events made to achieve some other purpose, such as receiving medical or police assistance, and forward-looking statements, such as those made in furtherance of a conspiracy or to elicit inculpatory statements from others, lack the required purpose. Michigan v. Bryant, — U.S. -, 131 S.Ct. 1143, 1157, 179 L.Ed.2d 93 (2011) (statement made by a mortally wounded victim in need of medical attention did not have an evidentiary purpose); Davis, 547 U.S. at 822, 126 S.Ct. 2266 (statements about ongoing events during a 911 call did not have an evidentiary purpose); United States v. Farhane, 634 F.3d 127, 131-32, 162-63 (2d Cir.2011) (statements promising future aid in a conspiracy did not have an evidentiary purpose); United States v. Burden, 600 F.3d 204, 225 (2d Cir.2010) (recorded statements of a cooperating witness made to induce a confession did not have an evidentiary purpose); cf. United States v. Logan, 419 F.3d 172, 178 (2d Cir.2005) (finding alibi statements made to police were testimonial).
Second, the statement must have been made in a way that is sufficiently solemn so as to make it more like “ ‘a formal statement to government officers’ ” rather than “ ‘a casual remark [made] to an acquaintance.’ ” Bryant, 131 S.Ct. at 1153 (quoting Crawford, 541 U.S. at 51, 124 S.Ct. 1354); Davis, 547 U.S. at 822, 126 S.Ct. 2266 (quoting Crawford, 541 U.S. at 51, 124 S.Ct. 1354). This does not mean that the statement must be contained in a formal written document, but merely that the circumstances surrounding its utterance must be such that a reasonable de-clarant would be aware of the serious nature of his or her declaration. Davis, 547 U.S. at 826, 126 S.Ct. 2266 (citing Crawford, 541 U.S. at 51, 124 S.Ct. 1354).
Finally, the statement must reasonably be understood as being “available for use at a later trial.” Melendez-Diaz, 129 S.Ct. at 2532 (quoting Crawford, 541 U.S. at 52, 124 S.Ct. 1354). That is, the speaker need not expect that the statement will be used in a criminal trial, or even that it is objectively likely that the statement will be used in a criminal trial, only that it is foreseeable that the statement could be used prosecutorially. Bryant, 131 S.Ct. at 1169 (Scalia, J., dissenting) (“[H]e must make the statement with the understanding that it may be used to invoke the coercive machinery of the State.”); see also Melendez-Diaz, 129 S.Ct. at 2532 (“[T]he affidavits [were] ‘made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.’ ” (quoting Crawford, 541 U.S. at 52, 124 S.Ct. 1354)).
Applying this formulation, it is evident that the admission of Dr. Jindrak’s report triggered the Confrontation Clause. First, the autopsy report was, inarguably, created to establish facts regarding the death of Mr. Somaipersaud. The report and its incorporated laboratory analyses contain *110 five final diagnoses, two statements of cause of death, detailed descriptions of various portions of Mr. Somaipersaud’s body, and calculated levels of toxins, all of which are factual statements.
Second, the report is sufficiently solemn. All reports generated by the New York City Office of Chief Medical Examiner (“OCME”) are required to “be signed by the medical examiner performing the autopsy.” N.Y.C. Admin. Code § 17-203 (1998). These reports are made by government officials for use by government officials. See United States v. Feliz, 467 F.3d 227, 237 (2d Cir.2006) (observing that OCME reports would qualify for the public records hearsay exception, which requires that the statement be made by a public officer or agency). Indeed, even if OCME did not have a long history of cooperation with law enforcement, all autopsy reports would remain statements made directly to law enforcement insofar as they are statutorily required to be available to law enforcement officers and prosecutors. N.Y.C. Admin. Code § 17-205 (1998) (“The appropriate district attorney and the police commissioner of the city may require from [OCME] such further records, and such daily information, as they may deem necessary.”) Moreover, like the reports in Bullcoming and Melendez-Diaz, Dr. Jindrak’s report contains a certification.
Third, it could have reasonably been anticipated that the autopsy report would be available for use in a criminal trial. Medical examiners working for OCME are statutorily obligated to make conclusions as to causes of death, to record the reasons for those conclusions, and to preserve those records for future use. N.Y.C. Admin. Code § 17-203 (“A detailed description of [those] findings ... shall be written or dictated.... The findings of the investigation at the scene of death, the autopsy and any toxicologic, histologic, serologic and microbiologic examinations, and the conclusions drawn therefrom shall be filed in the office of chief medical examiner.”).
Even if it could not have been reasonably foreseen at the outset of the autopsy that the report’s results would be used in a later trial, it seems clear that, at some point during her examination, Dr. Jindrak would reasonably have anticipated that it could be used later in a criminal prosecution. That is, once she certified that the primary cause of death was “acute mixed intoxication with alcohol and chlorproma-zine,” i.e., that Mr. Somaipersaud had been poisoned, a reasonable medical examiner would have anticipated that the autopsy report could be used prosecutorially. See Bryant, 131 S.Ct. at 1159 (observing that non-testimonial statements may “evolve into testimonial statements” as more information is provided (quoting Davis, 547 U.S. at 828, 126 S.Ct. 2266 (internal quotation marks omitted))).
When a statement such as Dr. Jindrak’s autopsy report is introduced against a defendant at a criminal trial, that evidence is “functionally identical to live, in-court testimony, because [it does] ‘precisely what a witness does on direct examination,’ ” rendering its declarant a “witness” and triggering the protections of the Confrontation Clause. Melendez-Diaz, 129 S.Ct. at 2532 (quoting Davis, 547 U.S. at 830, 126 S.Ct. 2266); see also Bullcoming, 131 S.Ct. at 2712; Crawford, 541 U.S. at 51, 124 S.Ct. 1354.
James was both charged with and convicted of murder and conspiracy to commit murder. The prosecution’s theory was that Mr. Somaipersaud had been poisoned. The prosecution offered the autopsy report to establish the very same facts, prejudicial to Mr. James, about which Dr. Jindrak would have been expected to testify at trial. Indeed, on direct examination, Dr. Ambrosi was asked both to identify Dr. *111 Jindrak’s conclusions as to cause of death and to state whether she agreed with those conclusions.
Moreover, I believe that the admission of any medical examiner’s report prepared by OCME would trigger the protections of the Confrontation Clause.[3] Dr. Jindrak’s report was not unique in the sense that the characteristics that made it testimonial are present in all autopsy reports prepared by OCME that are introduced against a defendant at a criminal trial. All such reports are made to establish facts about the cause of death of the decedent; they are made by and to government officials in a formalized recording; they contain statements a medical examiner could reasonably foresee would be used in a criminal prosecution; and if a prosecutor seeks to introduce a report for its truth, it would substitute for live testimony adverse to the defendant.
As noted, I believe that the majority’s approach goes astray by suggesting that to trigger the Confrontation Clause the “primary purpose” of an autopsy report must be use “at a later criminal trial.” This formulation postulates the existence of a medical examiner who gives adverse testimony but who is not a “witness” for Confrontation Clause purposes because he or she did not prepare the autopsy report primarily for use in criminal proceedings. In doing so, the opinion creates the very “third category of witnesses, helpful to the prosecution, but somehow immune from confrontation” that Melendez-Diaz expressly says does not exist. Melendez-Diaz, 129 S.Ct. at 2534.
Finally, as the Eleventh Circuit points out, “[mjedical examiners are not mere scriveners” and “autopsy reports are the product of the skill, methodology, and judgment of the highly trained examiners who actually performed the autopsy.” United States v. Ignasiak, 667 F.3d 1217, 1232 (11th Cir.2012) (holding autopsy reports to be testimonial and requiring confrontation) (citing Bullcoming, 131 S.Ct. at 2714). Both Bullcoming and Melendez-Diaz hold that a laboratory analyst’s report of sufficient solemnity triggers the protections of the Confrontation Clause. It would be incongruous indeed, if an autopsy report requiring numerous skilled judgments on the part of a medical examiner, did not require the same confrontation.

. The Supreme Court’s use of the ''criminal trial” language, while not entirely consistent, tends toward the same idea. Compare Bullcoming v. New Mexico, - U.S. -, 131 S.Ct. 2705, 2714 n. 6, 180 L.Ed.2d 610 (2011) (quoting Davis’ " ‘potentially relevant to a later criminal prosecution’ ” language in the context of a blood-alcohol test requested by the prosecutor), Michigan v. Bryant, - U.S. -, 131 S.Ct. 1143, 1148, 179 L.Ed.2d 93 (2011) (employing Davis’ " ‘potentially relevant to a later criminal prosecution’ ” language in the context of a police interrogation), and Davis v. Washington, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006) (articulating the "potentially relevant to a later criminal prosecution” language in the context of a 911 call), with Melendez-Diaz v. Massachusetts, 557 U.S. 305, 129 S.Ct. 2527, 2532, 174 L.Ed.2d 314 (2009) (quoting Crawford’s " ‘available for use at a later trial’ ” language in the context of a laboratory report requested by the police), and Crawford v. Washington, 541 U.S. 36, 51-52, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) (listing "available for use at a later trial” among the ‘‘[v]arious formulations” of the "core class” of testimonial statements).

. Interestingly, not only did "several early American authorities flatly reject[] any special status for coroner statements,” the historical precursors of modern medical examiners' reports, one of the cases cited in Crawford also stands for the proposition that evidence produced by coroners’ investigations requires confrontation, even though the purpose of those investigations was not a purely prosecu-torial one. Crawford, 541 U.S. at 47 n. 2, 124 S.Ct. 1354 (citing State v. Campbell, 30 S.C.L. 124, 130 (S.C.App.L.1844) ("The general object, at least, of our Act, would seem to be, to record the whole of the information obtained upon any inquest concerning the sudden or violent death of a man, for the purpose of a prosecution, for satisfaction, or any investigation of the public, or of individuals concerned. So much is due to the living and the dead. Sudden and unnatural deaths shock us all.... And let me here observe, that the information and publication of the kind of death, the wound, time and manner, place and circumstances, may often lead to un-looked for charges against unsuspected persons, and even of men abroad. And shall they all be assumed ... [not to require] cross-examination? Because our Act is general for all inquests, the examination public, and of *109 high respectability? On the contrary, is there not too much of mere formula, if not fiction, in such a notion?”)).

. At least two other federal circuits and a number of state courts of last resort have reached a similar conclusion regarding particular reports prepared by the equivalent of OCME in their jurisdictions. See, e.g., United States v. Ignasiak, 667 F.3d 1217 (11th Cir.2012); United States v. Moore, 651 F.3d 30 (D.C.Cir.2011); State v. Navarette, - N.M. -, 294 P.3d 435 (2013); State v. Kennedy, 229 W.Va. 756, 735 S.E.2d 905 (2012); Conners v. State, 92 So.3d 676 (Miss.2012) (noting a pre-Crawford decision that held admission of an autopsy report required confrontation); State v. Locklear, 363 N.C. 438, 681 S.E.2d 293 (2009); see also People v. Lewis, 490 Mich. 921, 806 N.W.2d 295 (2011) (vacating lower court's holding that an autopsy report was non-testimonial but holding the error harmless without significant discussion); Wood v. State, 299 S.W.3d 200 (Tex.Ct.App.2009), review denied, 2010 Tex.Crim.App. LEXIS 115 (2010).