18-3479-cr
United States v. Rasheed

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2019

(Argued: May 7, 2020          Decided: November 25, 2020)

Docket No. 18-3479-cr

_____

UNITED STATES OF AMERICA,

*Appellee,*

v.

ABDUL RASHEED,

*Defendant-Appellant.*

_____

Before:

LEVAL, LOHIER, and PARK, *Circuit Judges.*

Abdul Rasheed appeals from a judgment of conviction entered after a jury trial in the United States District Court for the Western District of New York (Siragusa, J.) for one count of escape, 18 U.S.C. §§ 751(a), 4082(a). On appeal, Rasheed argues that venue was improper in the Western District of New York, that certain statements to the jury deprived him of a fair trial, and that the District Court erred in calculating his advisory sentencing range and in imposing three conditions of supervised release, including a standard risk-notification condition that has since been modified district-wide in a standing order of the Western District of New York to correct a legal infirmity. For the reasons that follow, we **AFFIRM** the judgment as modified by the Western District of New York's standing order**.**

MARTIN J. VOGELBAUM, Assistant Federal Public Defender, Federal Public Defender's Office, Western District of New York, Buffalo, N.Y., *for Defendant-Appellant Abdul Rasheed*.

KATHERINE A. GREGORY, Assistant United States Attorney, *for* James P. Kennedy, Jr., United States Attorney for the Western District of New York, Buffalo, N.Y., *for Appellee United States of America*.

LOHIER, *Circuit Judge*:

Abdul Rasheed challenges a November 13, 2018 judgment of the United States District Court for the Western District of New York (Siragusa, J.) convicting him after a jury trial of one count of escape, in violation of 18 U.S.C. §§ 751(a) and 4082(a), and sentencing him to the statutory maximum term of imprisonment of sixty months, as well as a three-year term of supervised release. On appeal, Rasheed argues that his conviction should be vacated because venue was improper in the Western District of New York and because certain statements that the District Judge made to the jury violated his right to a fair trial. He also seeks remand for resentencing based on asserted errors in the calculation of his advisory sentencing range under the United States Sentencing Guidelines (U.S.S.G.) and in the imposition of three conditions of supervised release, including a standard risk-notification condition that has since been modified in a

2

district-wide standard order of the Western District of New York to correct a legal infirmity. For the reasons that follow, we affirm the judgment as modified by the Western District of New York's standing order.

**BACKGROUND**

In March 2015 the District Court sentenced Rasheed to a twelve-month term of imprisonment for violating conditions of a federal term of supervised release. He was initially incarcerated at the United States Penitentiary Lee (USP Lee) in Jonesville, Virginia.

In February 2016 Rasheed became eligible to serve the remainder of his custodial sentence at a residential reentry center (RRC), an institutional facility contracted by the United States Bureau of Prisons (BOP) to provide inmates nearing the end of their custodial sentences with helpful programs and services to facilitate reentry into the community. While assigned to an RRC, inmates remain in BOP custody and are authorized to leave the facility only with prior approval. Rasheed applied and was approved to serve the remainder of his sentence at Volunteers of America (VOA), an RRC in Rochester, New York, which is located in the Western District of New York. He was granted an unaccompanied furlough to travel there from USP Lee.

3

Rasheed's furlough agreement outlined the conditions of his furlough and his approved travel schedule. He was scheduled to depart USP Lee at 7:00 a.m. on March 1, 2016 with a town driver, who would drive him to a bus station in Kingsport, Tennessee; from there, Rasheed was scheduled to travel by bus departing Kingsport at 9:10 a.m. and arriving in Rochester by 11:50 a.m. the following day, with specified layovers and transfers en route; and he was required to report to VOA, which was walking distance from the Rochester bus station, no later than 12:00 p.m. on March 2, 2016.

Rasheed signed a statement on his furlough application indicating that he understood that the "furlough only extend[ed] the limits of [his] confinement and that [he would] remain in the custody of the Attorney General of the United States" at all times. Ex. App'x at 3. He further agreed that any "fail[ure] to remain within the extended limits of this confinement . . . shall be deemed as escape from custody of the Attorney General," punishable under 18 U.S.C. § 751 and 18 U.S.C. § 4082. Id.; see id. at 4.

On March 1, 2016, Rasheed left USP Lee, equipped with his itinerary, bus tickets, and a debit card worth about $50, but he failed to report to VOA in Rochester. By April 4, 2016, a task force coordinated by the United States

4

Marshal Services (USMS) still had not located him, and a warrant for his arrest was issued.

In late October 2016, nearly eight months after Rasheed failed to report to VOA, USMS discovered that Rasheed was in jail in Allegheny County, Pennsylvania, having been arrested in connection with a fatal shooting in Pittsburgh. Rasheed was later charged in Pennsylvania state court with multiple felonies; he eventually pleaded guilty to, among other charges, third-degree murder and aggravated assault.

In November 2016 a grand jury in the Western District of New York indicted Rasheed on one count of escape, in violation of 18 U.S.C. §§ 751(a) and 4082(a). Rasheed elected to proceed to trial. During the trial he and the Government stipulated that in 2015 Rasheed had been convicted of federal offenses in the Western District of New York and sentenced to a term of imprisonment and supervised release. The parties further stipulated that, as a result of his sentence, Rasheed "was committed to the custody of the United States Bureau of Prisons, where he was lawfully confined in an institution and facility at the direction of the Attorney General." Ex. App'x at 1.

At the close of the Government's case, Rasheed moved for a judgment of acquittal. He argued that the Government had failed to prove venue because there was no evidence that Rasheed "was ever in the Western District of New York" and, therefore, "no crime [was] committed [t]here." Joint App'x at 433. The Government replied that venue was proper because Rasheed was charged with "fail[ing] to remain within the extended limits of his confinement." Id. at 434. And after March 2, 2016, the Government contended, the VOA RRC, which is located in the Western District of New York, comprised "the limits of his confinement." Id. The District Court considered the issue of venue in the case of an escape from an unaccompanied transfer to be an "open question" in this Circuit, but it agreed with the Government and denied Rasheed's motion. Id. at 435.

Before the jury began to deliberate, the District Court denied Rasheed's nunc pro tunc motion for a mistrial based on two statements that the District Court had made during jury selection, the first alerting prospective jurors that Rasheed was currently in custody, and the second directing them not to consider that fact as bearing on Rasheed's guilt or innocence.[1] In denying the motion at

---

[1] The two statements were as follows:

such a late stage of the trial, the District Court provided the following curative jury instruction, which both parties found acceptable: "[T]he fact that Mr. Rasheed is in custody has no bearing on your determination of his guilt or nonguilt of the charge for which he stands accused and must not be considered by you in any way in reaching your verdict." Id. at 499. The jury quickly returned a guilty verdict on the escape charge.

---

> I told you, for example—it's no big secret—Mr. Rasheed was in custody. He had committed a crime, a felony. That's why he was in prison and I'm also telling you that you can't consider that fact, in and of itself, as a basis to find him guilty, you can't say, ah, I've heard enough. I'll ask [if] you can . . . do that.

Joint App'x at 132. And:

> Why is the Marshal here because if you haven't figured it out by now, believe me you would figure it out shortly that Mr. Rasheed is in custody. All right. I'm telling you that. And I'm also telling you this: The fact that he's in custody has nothing to do with his guilt or nonguilt. Do you all understand that? (Jurors saying yes.) You know, I'm a firm believer in raising these issues because I don't want to leave anything to speculation, you can't go back there in the jury room and say oh, he's in custody, he must have done something. No. That has no bearing on his guilt or nonguilt in this case. And . . . here's what I'm trying to drive home. If you . . . make up your mind and say, oh, the guy's been arrested he must have done something, he's in custody he must have done something, then we're wasting our time here. Make sense? Then we're truly wasting our time because the way our system works is you, if you're on this jury, have to make that determination based on what comes out in court as to whether the government has proven his guilt beyond a reasonable doubt. Can you all do that? (Jurors nodding yes.)

Id. at 228–29. Defense counsel objected outside the presence of the jury.

7

At sentencing, the Government advocated for a statutory maximum sentence of sixty months' imprisonment, to be served consecutively to all other state and federal sentences previously imposed on Rasheed. Defense counsel urged the District Court to impose a sentence concurrent to Rasheed's undischarged state term of imprisonment, but counsel did not otherwise challenge the calculation of Rasheed's Guidelines range of thirty to thirty-seven months. The District Court ultimately imposed an above-Guidelines sentence of sixty months' imprisonment, to run consecutively to Rasheed's Pennsylvania state sentence, and a three-year term of supervised release.

As relevant to this appeal, the judgment also included two special conditions of supervised release, each of which required Rasheed to participate in treatment programs and "to contribute to the cost of services rendered" by those programs. Sp. App'x at 5. A third, standard condition of supervised release warned Rasheed that "[i]f the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk." Id. at 4.

**DISCUSSION**

On appeal, Rasheed challenges his conviction based on improper venue and on due process grounds.  He also challenges his sentence based on asserted errors in the calculation of the advisory Guidelines range and the District Court's imposition of the cost-contribution and risk-notification conditions of supervised release.  We address each of these challenges in turn.

I

"[V]enue in federal criminal cases is controlled by a complicated interplay of constitutional provisions, statutes, and rules." United States v. Rowe, 414 F.3d 271, 277 (2d Cir. 2005) (quotation marks omitted).  A criminal defendant must be tried in the district where the crime was committed.  U.S. Const. amend. VI; Fed. R. Crim. P. 18.  The government bears the burden to prove by a preponderance of the evidence that venue is proper in the district of prosecution.  United States v. Kirk Tang Yuk, 885 F.3d 57, 71 (2d Cir. 2018).  Because the relevant facts in this case are not in dispute, Rasheed's venue challenge presents a question of law, which we review de novo.  United States v. Tzolov, 642 F.3d 314, 318 (2d Cir. 2011).

9

As an initial matter, we consider whether the crime of conviction itself tells us how to determine the situs of the crime. Recall that Rasheed was charged with violating 18 U.S.C. §§ 751(a) and 4082(a). Section 751(a) criminalizes an "escape[] or attempt[] to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General." Section 4082(a), in turn, provides that "[t]he willful failure of a prisoner to remain within the extended limits of his confinement, or to return within the time prescribed to an institution or facility designated by the Attorney General, shall be deemed an escape from the custody of the Attorney General" within the meaning of section 751(a).

Because the statute defining Rasheed's offense "does not specify how to determine where the crime was committed," we look to "the nature of the crime alleged and the location of the act or acts constituting it." United States v. Lange, 834 F.3d 58, 68 (2d Cir. 2016) (quotation marks omitted). In doing so, we keep in mind that "[v]enue is proper only where the acts constituting the offense—the crime's essential conduct elements—took place." Tzolov, 642 F.3d at 318 (quotation marks omitted).

10

Of course, where the nature of the offense and the essential conduct elements implicate multiple locations, venue may lie in more than one district. See Lange, 834 F.3d at 68–69. Thus "an offense 'begun in one district and completed in another, or committed in more than one district, may be . . . prosecuted in any district in which such offense was begun, continued, or completed.'" United States v. Holcombe, 883 F.3d 12, 15 (2d Cir. 2018) (quoting 18 U.S.C. § 3237(a)).

In this case, where Rasheed was accused in essence of failing to appear at a designated facility, we start with "the general rule that where the crime charged is a failure to do a legally required act, the place fixed for its performance fixes the situs of the crime." Johnston v. United States, 351 U.S. 215, 220 (1956). Although we have never previously applied this principle to a prosecution for an escape committed during an unaccompanied transfer, several of our sister circuits faced with similar factual circumstances have concluded that venue is proper in the district of the receiving facility to which a defendant was obligated (and failed) to report. See United States v. Overaker, 766 F.2d 1326, 1327 (9th Cir. 1985) (where a defendant escaped during an unescorted transfer from a federal prison in Minnesota to a federal prison camp in Arizona, venue was proper in

11

the District of Arizona); United States v. Wray, 608 F.2d 722, 723, 725 (8th Cir. 1979) (where a defendant escaped during an unescorted transfer from a correctional facility in California to a treatment center in Kansas City, Missouri, venue was proper in the Western District of Missouri); cf. United States v. Wilson, 262 F.3d 305, 320–21 (4th Cir. 2001) (where a defendant transferred from a North Carolina prison to a Nevada prison on a limited detainer was erroneously released by Nevada officials and failed to notify federal officials or return to the North Carolina facility, venue was proper in the Eastern District of North Carolina).

The Ninth Circuit's decision in Overaker is instructive. There, the court pointed out that "proper venue is based on the location of the offense, not the personal presence of the offender." 766 F.2d at 1327 (citing Travis v. United States, 364 U.S. 631, 634 (1961)). Under the circumstances of the transfer in that case, the defendant "was in the constructive custody of the Arizona [receiving facility] as soon as he was ordered to report to [it]," making venue proper in the District of Arizona, even if the defendant never physically entered its geographic boundaries. Id.; see also Wray, 608 F.2d at 724–25 (venue was proper in "the

12

district in which the required act" of reporting to a treatment center "should have been done").

We similarly conclude that, on the undisputed facts of this case, the extended limits of Rasheed's confinement required him to report to the VOA RRC in Rochester, New York by a designated time on March 2, 2016. His failure to appear there as required constituted an escape from the custody of the Attorney General under 18 U.S.C. §§ 751(a) and 4082. On these facts, we hold that venue was proper in the Western District of New York.

Rasheed attempts to distinguish Overaker and Wray by pointing out that the indictment against him alleged only that he "knowingly, willfully and unlawfully fail[ed] to remain within the extended limits of his confinement and escape[d], and attempt[ed] to escape, from the [VOA RRC]." Joint App'x at 14. Because the indictment did not allege a failure-to-report theory of escape, Rasheed contends, the Government was required to prove an affirmative act rather than a failure to act—in other words, to establish venue based on an action taken to breach the limits of Rasheed's confinement rather than a failure to report to the VOA RRC.

13

We disagree. Nothing in the language of the indictment or the statute suggests that a failure to remain within the extended limits of confinement excludes a failure to report to a designated facility at a designated time. The "extended limits of [Rasheed's] confinement," 18 U.S.C. § 4082(a), were defined by Rasheed's furlough agreement. And under the terms of that agreement, the VOA RRC was the only place Rasheed was authorized to be as of 12:00 p.m. on March 2, 2016. See Ex. App'x at 3. Whether Rasheed's failure to arrive at the VOA RRC on that day represented an affirmative act (e.g., getting off the bus at an unapproved stop) or an omission (e.g., failing to get off the bus at a designated transfer station) is immaterial to our analysis. What matters is that Rasheed failed to remain within the limits of the confinement under § 4082(a) in this case because he failed to report to the VOA RRC in Rochester when ordered to do so.

We also reject Rasheed's separate argument that, even if the escape for which he was convicted is a continuing offense that occurred in part in the Western District of New York, venue is nevertheless improper because his conduct did not have "substantial contacts" with that District. We have explained that the "substantial contacts" test applies "only if the defendant

14

argues that his prosecution in the contested district will result in a hardship to him, prejudice to him, or undermine the fairness of his trial." United States v. Rutigliano, 790 F.3d 389, 399 (2d Cir. 2015) (quotation marks omitted). "Otherwise, prosecution . . . may occur in any district in which such offense was begun, continued, or completed." Id. (quotation marks omitted).

But Rasheed does not even assert that he suffered any hardship or prejudice. Indeed, throughout the District Court proceedings Rasheed failed to raise a single objection based on venue until after the Government finished its case at trial. And even under the substantial contacts approach that Rasheed urges here, the mere fact that another district (in this case, the Western District of Virginia) may also have been a convenient or permissible venue does not mean venue in the Western District of New York was improper. See 18 U.S.C. § 3237(a).

We therefore conclude that venue was proper in the Western District of New York and that the District Court correctly denied Rasheed's motion for a judgment of acquittal on venue grounds.

II

Rasheed next argues that the District Court should have granted his motion for a mistrial based on the District Judge's statements during jury selection that, Rasheed submits, denied him the right to a fair trial and an impartial jury "capable and willing to decide the case solely on the evidence." United States v. Parse, 789 F.3d 83, 99 (2d Cir. 2015). We review the District Court's denial of a mistrial for an abuse of discretion. United States v. Yannai, 791 F.3d 226, 242 (2d Cir. 2015).

With respect to the statements at issue, the District Judge initially informed the panel of prospective jurors that Rasheed "was in custody" and "in prison" because he "had committed a crime, a felony." Joint App'x at 132. The District Judge later drew the jurors' attention to the United States Deputy Marshal standing near Rasheed in the courtroom, confirming that the Deputy Marshal was there because Rasheed "is in custody." Id. at 228. As we have already described, the District Judge followed each of these remarks with an instruction that Rasheed's custodial status should have no bearing on the verdict. For example, the District Judge at one point told the prospective jurors, "I'm also telling you that you can't consider that fact, in and of itself, as a basis to find him

16

guilty." Id. at 132. The jurors were later warned that "[t]he fact that he's in custody has nothing to do with his guilt or nonguilt. . . . That has no bearing on his guilt or nonguilt in this case. . . . [Y]ou, if you're on this jury, have to make that determination based on what comes out in court [and] . . . whether the government has proven his guilt beyond a reasonable doubt." Id. at 228–29. Rasheed objected to the District Court's decision to explicitly refer to the fact that he was in custody. But the District Court justified these instructions by explaining that jurors "would have to be in another zone not to understand that an individual's in custody, especially when he's walked into [the] court[room]," and that he raised the issue in order to "make sure that the jury doesn't rely on something that they shouldn't." Id. at 231–32.

We understand that the District Judge's intention in making these statements was, as the District Judge stated, to guard against the possibility that jurors might speculate about Rasheed's custodial status and then improperly consider that fact in reaching a verdict. We also recognize that such a possibility may be greater in cases like this one, where custody is an element of the charged offense. The District Court's approach in this case is nevertheless problematic for at least two reasons. First, the District Judge's statements did not merely instruct

17

the jury to avoid speculating about Rasheed's status; they went further by confirming that Rasheed was in fact in custody at the time of trial. And second, the District Court made these statements without first consulting either the defendant or the Government about whether the statements were warranted or desirable. Cf. United States v. Perez, 144 F.3d 204, 211 (2d Cir. 1998) (affirming conviction over due process objections where the district court offered to give a curative instruction about custody status but defendants did not ultimately request one). The District Court should instead have previewed for the parties its proposed statements to the jurors, thus giving each side an opportunity to address any undue prejudice or other objections outside the presence of the jury. It is rarely, if ever, good practice for a district court to make an assertion to the jury that is potentially prejudicial to either party without first apprising the parties that it intends to do so and giving each side a meaningful opportunity to respond. See United States v. Ronder, 639 F.2d 931, 934 (2d Cir. 1981) (noting in the context of jury notes that "counsel should be afforded an opportunity to be heard before the trial judge responds.")

Nevertheless, it was not an abuse of discretion for the District Court to deny Rasheed's motion for a mistrial. Rasheed had already stipulated to the fact

that he was recently in custody, even though this was an essential element of the escape charge. This alone significantly diluted the problematic nature and impact of the District Court's unexpected statements to the prospective jurors. In addition, each reference to Rasheed's current custodial status was followed immediately by unambiguous instructions that the fact of custody was not a permissible basis from which the jury could infer guilt. And Rasheed also agreed to a curative jury instruction relating to the statements, the accuracy of which is not challenged on appeal. It is an "almost invariable assumption of the law that jurors follow their instructions," Richardson v. Marsh, 481 U.S. 200, 206 (1987), and Rasheed offers no persuasive reason to suspect that the jurors here did otherwise.

For these reasons, the District Court's statements did not violate Rasheed's right to a fair and impartial trial in violation of due process, and the denial of a mistrial was not an abuse of discretion.

III

As noted, Rasheed also challenges a number of the District Court's sentencing determinations, ranging from the applicable Guidelines range to standard and special conditions of supervised release.

A

We start with Rasheed's challenge to the calculation of the advisory Guidelines range. On appeal, Rasheed argues that his Pennsylvania state sentences for crimes committed while he was an escapee should have been treated as "relevant conduct" under U.S.S.G. § 1B1.3(a)(1)(A) rather than as prior sentences carrying criminal history points under U.S.S.G. §§ 4A1.1 and 4A1.2(a)(1). Because Rasheed did not object to the calculation of his criminal history category at sentencing, we review this challenge for plain error.[2] We will therefore vacate the sentence only if (1) there is an error, (2) the error is "plain," (3) it "affect[s] substantial rights," and (4) it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." United States v. Gamez, 577 F.3d 394, 397 (2d Cir. 2009); see also Fed. R. Crim. P. 52(b).

---

[2] In advocating before the District Court for a concurrent sentence, Rasheed unsuccessfully argued that the Pennsylvania state convictions should have been treated as "relevant conduct" committed during the "ongoing offense" of escape under U.S.S.G. § 5G1.3(b). Joint App'x at 568. Insofar as Rasheed's argument before the District Court implicates a different provision of the Guidelines and a separate question about consecutive or concurrent sentences, Rasheed's argument before the District Court differs from the one that he now presses on appeal. During the District Court proceedings, Rasheed did not object to the calculation of his criminal history as Category V, to the allocation of criminal history points under U.S.S.G. § 4A1.1 as a result of the Pennsylvania state sentences, or to the advisory Guidelines range of thirty to thirty-seven months' imprisonment. As defense counsel agreed at oral argument, plain error review therefore applies to our determination of Rasheed's current challenge to his consecutive sentence. Oral Arg. Tr. at 11–12.

The District Court treated Rasheed's Pennsylvania state sentences as prior sentences under U.S.S.G. § 4A1.2(a)(1) and allocated criminal history points to them under § 4A1.1. Doing so increased Rasheed's criminal history category from category IV to category V and his advisory sentencing range from 24–30 months to 30–37 months. Rasheed argues that this was error because the definition of "prior sentence" under § 4A1.2(a)(1) excludes sentences imposed for "relevant conduct" under § 1B1.3. See U.S.S.G. § 4A1.2 cmt. n.1. And, Rasheed contends, the Pennsylvania convictions fit the definition of "relevant conduct" because they were committed "during" the continuing crime of escape. See id. § 1B1.3(a)(1)(A) (defining "relevant conduct" to include "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction").

Although we have not previously addressed the "relevant conduct" definition under § 1B1.3 in the context of an escape conviction and crimes committed after a defendant escaped custody and prior to apprehension, we need not determine whether Rasheed can satisfy the second prong of plain error review because Rasheed's challenge clearly fails under the third prong of the

21

plain error test. He has not shown "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." Molina-Martinez v. United States, 136 S. Ct. 1338, 1343 (2016) (quotation marks omitted). Even in the case of significant procedural errors, we will not vacate a sentence and remand if "the record indicates clearly that the district court would have imposed the same sentence in any event." United States v. Cramer, 777 F.3d 597, 601 (2d Cir. 2015); see also United States v. Shuster, 331 F.3d 294, 296 (2d Cir. 2003).

The sentencing record in this case removes any doubt. The District Court imposed an above-Guidelines sentence of sixty months' imprisonment, which was the statutory maximum and twice the length of the lower end of the advisory range, to run consecutively to Rasheed's undischarged state sentences. In justifying the upward variance from the applicable Guidelines range, the District Court cited Rasheed's "lengthy criminal record," history of "violations of supervision [and] disciplinary violations while incarcerated," and his "repetitive violent criminal conduct." For the District Court, Rasheed's past conduct reflected a "life characterized by lawlessness and violence," a "disregard for the rules and rights of others," and a failure of "all attempts to rehabilitate," Joint

22

App'x at 588, 595–97. The District Court repeatedly affirmed its intention to impose the maximum permissible sentence. See id. at 574 ("I'm inclined to give you five years to run consecutive," subject only to any legal "limit[ations] [on] my discretion to give you the maximum sentence"); id. at 560 ("[T]here certainly is a sufficient basis, as far as I'm concerned, to give you the maximum sentence."). On this record, Rasheed has failed to show a reasonable probability that a lower criminal history category and advisory range would have affected the ultimate sentence imposed.

Because Rasheed's arguments founder under the third prong of plain error review, there is also no need for us to determine whether the District Court's erred in treating the Pennsylvania state sentences as prior sentences rather than relevant conduct under the Guidelines.

B

Finally, Rasheed challenges three of the conditions of supervised release that the District Court imposed at sentencing. The first two are special conditions, with one directing him to participate in a substance abuse program and the other in a mental health treatment program. The third condition is a standard "risk-notification" condition, which we explain further below.

23

As we confirmed in <u>United States v. Boles</u>, each of these conditions of supervised release must be "reasonably related to (i) the nature and circumstances of the offense and the history and characteristics of the defendant, and (ii) the purposes of sentencing, including the need to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed training or treatment." 914 F.3d 95, 111 (2d Cir. 2019); <u>see</u> <u>also</u> 18 U.S.C. § 3583(d). Because Rasheed did not object to the conditions he now contests, we review the District Court's decision to impose them for plain error. <u>See</u> <u>United States v. Haverkamp</u>, 958 F.3d 145, 151 (2d Cir. 2020).

1

Rasheed criticizes the two special conditions of supervised release that relate to substance abuse and mental health programs on the ground that each requires that he "contribute to the cost of services rendered." Rasheed contends that before imposing the cost-contribution requirement the District Court failed to find that he was able to pay for the costs of those programs. <u>See</u> Sp. App'x at 5. In support, Rasheed points out that the District Court found that, after spending over 23 years in state prison, he would not be able to pay a fine. More

importantly, Rasheed also relies on 18 U.S.C. § 3672, which provides that "[w]henever the court finds that funds are available for payment by or on behalf of a person furnished . . . services, training, or guidance, the court may direct that such funds be paid." Rasheed asks that we vacate the cost contribution requirements of the substance abuse and mental health conditions and that we remand to permit the District Court to "revise them," which we understand to mean that the District Court would modify the judgment to eliminate the cost contribution requirements or make the additional findings necessary to justify them.

Remand is unnecessary. "[W]here an order or judgment is unclear, a court retains inherent authority to interpret ambiguities . . . , and in doing so may resort to the record upon which the judgment was based." United States v. Spallone, 399 F.3d 415, 421 (2d Cir. 2005) (quotation marks omitted). The cost contribution requirement here is silent on the issue of how Rasheed's "contribution" is to be calculated. But the District Court found that Rasheed was likely to be unable to pay a fine, which suggests that his ability to pay is a relevant concern in Rasheed's case. We therefore construe the cost-contribution conditions to provide that the requirement that Rasheed contribute to the cost of

25

services rendered is contingent upon a finding that he is able to pay such a contribution.  See United States v. Young, 910 F.3d 665, 671–72 (2d Cir. 2018) (construing substance abuse and mental health conditions of supervised release to exclude inpatient treatment).  Rasheed also retains the ability to later move to modify or terminate the condition under 18 U.S.C. § 3583(e).

2

As noted, Rasheed also raises a challenge to the standard risk-notification condition imposed by the District Court, which provided as follows:

> If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction.  The probation officer may contact the person and confirm that you have notified the person about the risk.

Sp. App'x at 4.  Rasheed claims that the condition is an improper delegation of judicial authority and discretion to the probation officer.

Two months after judgment was entered in this case, we held in Boles that an identically worded risk-notification condition was an impermissible delegation to the probation officer of "unfettered discretion with respect to the notification requirement."  914 F.3d at 112.  In light of our decision, the District Court for the Western District of New York entered a standing district-wide

order modifying the standard risk-notification condition (including as it applies to Rasheed) to read as follows:

> If the court determines in consultation with your probation officer that, based on your criminal record, personal history and characteristics, and the nature and circumstances of your offense, you pose a risk of committing further crimes against another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.

Am. Standing Order in re: United States v. Boles (W.D.N.Y. Mar. 22, 2019) [hereinafter "W.D.N.Y. Standing Order"]. As modified by the Western District of New York's standing order, the risk-notification condition now requires Rasheed to notify a third party that he "pose[s] a risk of committing further crimes against another person" if "the court determines in consultation with [the] probation officer" that he poses such a risk and if required by the probation officer. W.D.N.Y. Standing Order.

Rasheed argues that the modified condition still violates our holding in Boles because it continues to delegate discretion to the probation officer to determine "whether [Rasheed] must notify the person or entity at risk." Appellant's Br. 50. But that argument is foreclosed by a number of recent decisions in which we have addressed the Western District's modified standing

27

order.  See United States v. Bryant, 976 F.3d 165, 182 (2d Cir. 2020); United States v. Birkedahl, 973 F.3d 49, 57 (2d Cir. 2020); United States v. Traficante, 966 F.3d 99, 105–07 (2d Cir. 2020).[3]  As we have reasoned in those decisions, Rasheed's claim is not yet ripe for review because "any allegedly improper delegation is conditioned on the district court finding, during [Rasheed's] term of supervised release, that he poses a risk of committing further crimes against another person," see Birkedahl, 973 F.3d at 57 (quotation marks omitted), and any such "ostensibly improper delegation may never actually occur," Traficante, 966 F.3d at 106.  Accordingly, we decline to consider Rasheed's challenge to this condition of supervised release, and we express no view of any challenge he may bring in the future should the District Court determine that Rasheed poses a risk to an individual and allows the probation officer to decide whether that individual must be notified.

---

[3] See also United States v. Whitaker, 827 F. App'x 39 (2d Cir. 2020) (summary order); United States v. Jackson, 820 F. App'x 73, 74–75 (2d Cir. 2020) (summary order); United States v. Frye, 826 F. App'x 19, 24–25 (2d Cir. 2020) (summary order); United States v. DeCapua, 822 F. App'x 16, 18–19 (2d Cir. 2020) (summary order); United States v. Dill, 822 F. App'x 19, 23 (2d Cir. 2020) (summary order).

28

**CONCLUSION**

For the foregoing reasons, we AFFIRM the judgment of the District Court as modified by the standing order of the United States District Court for the Western District of New York.