Trustees of The Cincinnati Southern Ry. Co. v.
McWilliams et al.

*Eminent domain—Appropriation of easement for railroad
tracks in street—Value of property affected—Evidence of
nature and extent of defendants' business—Book account
value of property admissible—Charge to jury—Damage to
business—Expense of changing buildings to conform to
new conditions—Error proceedings—Law of the case.*

1. In the trial of an action to appropriate an easement in a
city street in front of a manufacturing establishment, for
the purpose of constructing a steam railroad above the
grade of the street, evidence is admissible to show the
nature and extent of the defendants' business conducted
on the premises, the facilities provided for handling the
business, the character and convenience of the buildings
for economy of operation, and the nature of the obstruc-
tion to conducting the business that will result by rea-
son of the appropriation, all for the purpose of showing
the value of the property before and after the appropria-
tion of the easement.

2. It is error in such a case to refuse to instruct the jury
that they should not include in their verdict any amount
on account of damages to the business of the defendants
as carried on upon the premises.

3. In assessing the damages which a manufacturing company
suffers as a result of the construction of a steam railroad
in a public street on which its plant abuts, the jury may
take into consideration the reasonable expense of modify-
ing the building to conform to the new conditions, when
such modifying plan is reasonable and practical.

4. The defendants having testified to the value of the prop-
erty, it was error to exclude their books of account show-
ing the property carried at about half the value to which
they testified.

5. In the absence of clear and manifest error a court will
adhere to the law of the case as established at a former
hearing of the same case in the same court. (*Russell,*

*Admr.,* v. *Fourth National Bank,* 31 O. C. A., 193, followed.)

(Decided April 2, 1923.)

ERROR: Court of Appeals for Hamilton county.

*Messrs. Buchwalter, Headley & Smith,* for plaintiffs in error.

*Mr. Theodore Horstman* and *Mr. Clarence A. Schneiders,* for defendants in error.

RICHARDS, J. (of the Sixth Appellate District, sitting in place of BUCHWALTER, J.). The defendants own and operate a manufacturing plant abutting on McLean avenue in the city of Cincinnati, and the original action was commenced in the court of common pleas by the trustees of the Cincinnati Southern Railway Company to appropriate certain easements owned by them in said avenue. The first trial resulted in a verdict and judgment assessing the value of the rights appropriated at $20,000. The Trustees of the Cincinnati Southern filed a petition in error in this court asking a reversal of the judgment, and the defendants filed a cross-petition, also seeking a reversal. That action was heard by the judges of the fourth appellate district, who reversed the judgment, finding error to have been committed against both parties, the journal entry reciting that there was error apparent on the face of the record prejudicial to both parties "as appears from the opinion of this court." The case was thereupon tried a second time, resulting in a verdict and judgment finding the value of the rights appropriated to be $50,000, and this proceeding in

error is brought to secure a reversal of the latter judgment.

The plaintiffs have constructed a new bridge over the Ohio River and seek to appropriate the right to occupy a portion of McLean avenue as an approach to this bridge. McLean avenue was originally 100 feet wide, but many years ago the railroad company appropriated a right of way through the central portion thereof, leaving a strip 40 feet wide adjoining the property of these defendants. The present appropriation will narrow the street in front of their property to about 25½ feet, and the railroad tracks will be carried at a height of about 14 feet above the grade of the street on a cement structure in the street, denominated by counsel a "Chinese wall." The railroad company has not appropriated, nor does the improvement touch, any of the physical property of the defendants, but takes only the easement which they have by virtue of owning real estate abutting on McLean avenue.

Many claimed errors are assigned which it is urged require a reversal of the judgment. Counsel for plaintiffs insist that the common pleas court permitted a recovery for, and that the verdict in part represents, damage to the business conducted in the manufacturing plant of the defendants. Evidence was introduced by the defendants tending to prove that they were conducting an extensive business in the manufacture of boxes, receiving sometimes eight or ten carloads of lumber a day, and delivering daily, by means of trucks, twelve or eighteen loads of completed boxes; that the raw material was received at one end of the factory and delivered at the other end a com-

pleted product, and that the manufacturing plant was supplied with all modern facilities for econ. omy of operation in handling the material and delivering the boxes on trucks. They offered evidence to show that the buildings were constructed and the machinery installed with special reference to conducting the business in which they were engaged, and evidence to show the handicap which they would be under in conducting their business as a result of the appropriation made by the railroad company. Much evidence was offered along this line and the evidence was competent for the light it would shed upon the value of the property before and after the appropriation.

The trial judge correctly instructed the jury that the measure of damages was the difference in the market value of the property immediately before and immediately after such appropriation was made. It is stated in the printed brief of counsel for defendants that the trial judge instructed the jury that the defendants were not entitled to recover anything by reason of damages to their trade or business on account of the appropriation. In view of the fact that the bill of exceptions contains much evidence relating to the extent of the defendants' business, such a charge would have been eminently proper, and indeed was necessary, to insure a correct verdict, but we do not find that any charge of that character was given. On the contrary, counsel for plaintiffs duly requested the court to charge the jury that they should not include in their verdict any amount whatever on account of damages to the business of the defendants as carried on upon the premises, but this request was refused, and, while the charge

that was in fact given relating to the measure of damages was correct as far as it went, the plaintiffs were entitled to have the jury instructed as requested by them.

It is impossible to read the record in this case without being forced to the conclusion that the introduction of evidence as to the nature and extent of the defendants' business and the manner in which it was conducted, coupled with the failure of the trial judge to give the special charge as requested, resulted in the large award of $50,000 as the amount of damage suffered by the defendants. This conclusion is especially required by the fact that one of the defendants in his testimony estimated their damages at more than $138,000, and stated that part of the sum was damage to their business, and that the sum named represented their total loss in the conduct of their business, while another witness testified that at least 10 per cent. of the depreciation was damage to the business of the defendants. The amount awarded is clearly and manifestly excessive and against the weight of the evidence.

The testimony of the defendants tended to show the impracticability of remodeling their buildings so as to adjust them to the new conditions; but the court excluded the testimony of the witness Lieman, tending to show that the building could be remodeled and the machinery readjusted at a reasonable expense. In determining the amount of damages which a manufacturing company suffers as a result of the appropriation of an easement, or a portion of an easement, which it has in a public street in connection with its plant abutting thereon, the jury may take into consid-

eration the expense of adjusting or modifying its building to conform to the new conditions, when such plan for adjusting or modifying the building is a reasonable and practical one. The railroad company making the appropriation is entitled to introduce evidence of such expense in connection with evidence showing that the plan is a reasonable and practical one and not merely fanciful. The introduction of evidence of that character is in compliance with the familiar rule that it is the duty of an injured party to minimize his damages.

The defendants testified as witnesses in their own behalf, and in the course of their testimony gave their opinions as to the value of their property before the appropriation. It developed that the books of account kept by them contained a statement showing the value at which they carried the plant. The plaintiffs sought to cause the production of the defendants' books, which plaintiffs claimed would show that value to have been less than one-half of the value fixed by the defendants in their testimony, but they were denied that right. The evidence showing the value at which the property was carried by the defendants on their books was competent in cross-examination. It would, of course, be open to any explanation they might offer, but the book value would bear on the weight to be given to their oral testimony on value and should have been received.

In conducting their business the defendants made very extensive use of McLean avenue in delivering completed boxes by means of trucks, and they contend that they suffer very substantial damages in being deprived of that facility as a

result of the narrowing of the street in front of their premises to 25½ feet. The evidence shows that before the appropriation was made the defendants were accustomed to back their trucks up to their place of business and allow them to stand transversely to the street while they were loading boxes, and they urge that since the street has been so narrowed it is necessary to load the trucks while they are standing parallel with the street, and that this is a far more inconvenient method and involves much increased delay and expense. They introduced in evidence an ordinance of the city of Cincinnati permitting the use of streets by backing vehicles up to the curb for the purpose of loading or unloading merchandise, the ordinance providing that the street should not be unreasonably obstructed, nor for a longer period of time than is necessary for such loading or unloading. The plaintiffs in error contend that the defendants are not entitled to recover damages by reason of being deprived of the opportunity to thus load their trucks.

The interest in a street which is peculiar and personal to the abutting lot owner is the right to have free access over it to his lot and buildings, substantially in the manner he would have enjoyed the right in case there had been no interference with the street; and any appropriation which substantially interferes with that right is a diversion of the street from the purposes for which it was dedicated and a taking of the abutter's property. 20 Corpus Juris, 689. This right our Supreme Court has said is as much property as the lot itself. *Callen* v. *Columbus Edison Electric Light Co.*, 66 Ohio St., 165. The right of the

owner of an abutting lot to cause trucks to be backed up against his curb for the purpose of loading and unloading merchandise is of course subject to the reasonable regulation of the municipal authorities, just the same as other uses of public streets, and must not be so exercised as to unreasonably interfere with traffic. Such right, reasonably exercised, is a part of the easement in the street which belongs to the abutting lot owner. It is true that various courts have held, where the right to occupy a street has been secured by a street railway company, that the abutting owner has no remedy, although the occupancy of the street by the tracks of a street railway company may prevent him from standing his trucks transversely to the street. These decisions are based upon the principle that the use of the street for the purposes of a street railroad, by whatever motive power it may be operated, does not create any additional burden on the rights of the property owners, nor an interference with the primary use of the street. Decisions of this character amount to no more than holding that the use of a street by a street railway company for the purpose of transporting passengers gives no right to the abutting owner to recover damages, even though the tracks may be so located as to prevent the abutting owner from using his property by standing trucks transversely to the street for purposes of loading and unloading. *Billings* v. *Cleveland Railway Co.*, 92 Ohio St., 478, 492; 10 Ruling Case Law, 106.

Our attention has not been called to any decision where that conclusion has been reached in the case of a steam railroad company, which is universally

held by our courts to create an additional burden on the rights of the abutter.

Furthermore, this precise question was presented and argued to the judges of the fourth appellate district when this case was in this court the first time, and it was then decided that the defendants were entitled to recover damages by reason of being deprived of such use of the street. While this court has the power to redetermine what was then adjudged, it should adhere to the former decision unless the decision was very clearly erroneous. Such was the holding in this court in *Russell, Admr., v. Fourth National Bank*, 31 O. C. A., 193, affirmed by the Supreme Court, 102 Ohio St., 248. The Supreme Court in that case, in the course of its opinion, on page 262, quotes with approval the following language from *Messenger* v. *Anderson*, 225 U. S., 436:

"In the absence of statute, the phrase 'law of the case,' as applied to the effect of previous orders on the later action of the court rendering them in the same case, merely expresses the practice of courts generally to refuse to open what has been decided—not a limit to their power."

The duty of a court under such circumstances was considered in the case of *C., C., C. & St. L. Ry. Co.* v. *Linger*, an unreported case decided on March 16, 1917, by the judges of the sixth district court of appeals sitting in Hancock county. In that case the court used the following language:

"The record in this case presents for our consideration precisely the same question in all respects in reference to the right of the plaintiff to recover the value of the use of the property notwithstanding the provisions of Section 11084, which

was presented to this court in the former proceeding in error heard before Judges Crow, Kinder and Pollock, and covered by the opinion of this court written by Judge Pollock on September 18, 1915. With that opinion and the decision of the court before the trial judge at the second hearing it was his plain duty to hold as he did hold with respect to the question of the right of Linger to recover for the use of the premises. We deem it the plain duty of this court at this time to follow the decision of the court entered on the former hearing, and it is none the less our duty by reason of the fact that the decision entered on the former proceeding in error was not concurred in by all of the judges.''

It having been decided when this case was first in this court that the deprivation of the right to stand trucks transversely to the street when being loaded was a proper item of damages, it was the manifest duty of the trial judge on the second trial to follow that ruling, and he did pursue that course. To now hold that he was in error for doing that which it was his plain duty to do would be unfair to both the trial court and to litigants.

We have examined with care all of the assignments of error, but find none prejudicial to the rights of the plaintiffs in error except as set forth above; but by reason of those errors the judgment will be reversed and the cause remanded for new trial.

*Judgment reversed, and cause remanded.*

CUSHING and HAMILTON, JJ., concur.