15-0024-cr
*United States v. Bennett*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term, 2015

(Argued: April 28, 2016          Decided:  October 6, 2016)

Docket No. 15-0024-cr

---

UNITED STATES OF AMERICA,

*Appellee*,

– v. –

DARRELL BENNETT, also known as Sealed Defendant 1,

*Defendant-Appellant*,

---

Before: WALKER, CALABRESI, and HALL, *Circuit Judges*.

Defendant-Appellant Darrell Bennett appeals his below-Guidelines sentence of 84 months' imprisonment after pleading guilty to an information charging him with one count of possession of child pornography under 18 U.S.C. § 2252A(a)(5)(B). Bennett contends that the District Court (Sullivan, *J.*) erred by applying in its calculation of the Guidelines range a five-level enhancement under U.S.S.G. § 2G2.2(b)(3)(B) for distribution of child pornography "for the receipt, or expectation of receipt, of a thing of value" based on Bennett's use of a peer-to-peer file-sharing system to exchange pornography. Although we conclude that Bennett's specific use of file sharing warranted this enhancement, we hold that the District Court erred in calculating the Guidelines sentence by failing to recognize that, under U.S.S.G. § 5G1.1(a), where the statutory maximum falls below what would be the Guidelines range, the statutory maximum becomes the Guidelines sentence. Accordingly, we VACATE his sentence and REMAND for resentencing.

---

COLLEEN P. CASSIDY, Federal Defenders of New York, Inc., Appeals Bureau, New York, New York, *for Defendant-Appellant*

EUN YOUNG CHOI (Adam S. Hickey, *on the brief*), *Assistant U.S. Attorneys*, *for*, Preet Bharara, *United States*

*Attorney for the Southern District of New York*, New York, New York, *for Appellee*

CALABRESI, *Circuit Judge*:

Defendant Darrell Bennett appeals his sentence of 84 months' imprisonment entered in the United States District Court for the Southern District of New York (Sullivan, *J.*) after he pled guilty to one count of possession of child pornography under 18 U.S.C. § 2252A(a)(5)(B). Bennett argues that the District Court erred in calculating the Guidelines range by imposing a five-level enhancement under U.S.S.G. § 2G2.2(b)(3)(B) for distribution of child pornography "for the receipt, or expectation of receipt, of a thing of value" based on his use of a peer-to-peer file-sharing system to trade pornography. While we ultimately conclude that the manner in which Bennett used file sharing warranted this enhancement, we hold that the District Court erred in describing the Guidelines range as above the statutory maximum for the charge. We therefore vacate and remand for resentencing.

## BACKGROUND

Bennett pled guilty to an information charging him with one count of possession of child pornography under 18 U.S.C. § 2252A(a)(5)(B). Investigators with the Department of Homeland Security ("DHS") identified Bennett as part of a larger investigation into the distribution of child pornography via the internet. In particular, DHS was investigating peer-to-peer file-sharing services, which allow users to download files stored on other users' computers via the internet. On November 15, 2012, an undercover agent contacted Bennett through the file-sharing network GigaTribe and requested access to the files stored on

Bennett's computer. Bennett provided the password (which was "fun"), and the agent downloaded six videos from Bennett's computer that contained child pornography. The undercover officer used software to determine the Internet Protocol address of Bennett's computer, which was then used to identify Bennett's residence.

**The Offense Conduct.** On February 22, 2013, DHS agents executed a warrant to search Bennett's Manhattan apartment for child pornography. The agents seized Bennett's computer, which was later found to contain 208 still images of child pornography and approximately 79 videos of child pornography. These images and videos included graphic depictions of adult men engaging in oral and anal intercourse with prepubescent boys. Forensic analysis of Bennett's computer also established that he had shared his password approximately 221 times with approximately 174 different users on GigaTribe.

In many cases, Bennett shared his password with other users in exchange for their passwords (password-for-password, or "pass-for-pass" exchanges). For instance, Bennett engaged in one such exchange with another user:

[Bennett]: whats up?

[Bennett]: im in teens boys and stuff.

[Bennett]: what about u

[Other User]: 3 to 15 b//b, m//b b//g[1]

---

[1] At sentencing, the Government explained this portion of the discussion as Bennett stating that he was interested in pornography involving "teens, boys and stuff" and the other user describing his own interest in pornography involving "people . . . between the ages of three [and] fifteen" and "boy on boy," "man on boy," and "boy on girl" pornography. App. 229. This characterization was not contested by Bennett's counsel.

[Other User]: pass for pass?

[Bennett]: yea

[Bennett]: mine is fun

[Other User]: lol

[Other User]: mine is; FFK25

[Bennett]: cool

…

[Bennett]: im trying to download but its not starting

[Other User]: because I have a huge amounts of people in que as I have possibly too many files…sorry…be patient s I rarely go offline

[Bennett]: ok cool

1:14-cr-203-1 Doc. 29, Ex. D, at 4. Bennett traded passwords with users on other occasions, such as:

[Other User]: wanna trade passes?

[Bennett]: yea

[Bennett]: mine is fun

[Bennett]: whats yours

[Other User]: thanks

[Other User]: t

*Id.* at 3. And:

[Other User]: would be interested in trading passes if you are

[Bennett]: yea I am

[Bennett]: yea

[Bennett]: mine is fun

[Other User]: mines []

[Other User]: thanks for that

[Bennett]: thanks

*Id.* at 9.

Bennett was arrested and charged with the receipt and distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2), in addition to possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). On March 25, 2014, however, Bennett waived indictment and consented to the filing of an information that charged him solely with the possession count. And, on September 5, 2014, Bennett pled guilty before the District Court (Sullivan, *J.*) to the possession count of the Information.

**The PSR.** The Presentence Report ("PSR") prepared by the Probation Office determined the Guidelines range to be 97 months' to 120 months' imprisonment. In calculating this range, the PSR found that the base offense level was 18 and applied the following sentencing enhancements: (1) a two-level increase because Bennett possessed pornography that "involved a prepubescent minor or a minor who had not attained the age of 12 years"; (2) a two-level increase because the offense involved "distribution other than distribution described in subsections A through E" of 18 U.S.S.G. § 2G2.2 (b)(3);[2] (3) a four-

---

[2] Section 2G2.2.(b)(3) provides for a sentence enhancement where the offense conduct involves the distribution of material involving sexual exploitation of a minor. The

level increase because Bennett possessed pornography that "involved material that portrays sadistic or masochistic conduct or other depictions of violence"; (4) a two-level increase because "the offense involved the use of a computer or an interactive computer service"; and (5) a five-level increase because the offense involved 600 or more images. PSR ¶¶ 25–37. This resulted in an adjusted offense level of 33, which was reduced by three levels for acceptance of responsibility for a total offense level of 30.

The total offense level of 30, together with Bennett's criminal history category of I, resulted in a Guidelines range of 97 months' to 121 months' imprisonment. But, because the Guidelines-range maximum was limited by the statutory maximum of 120 months'

---

degree of that enhancement, however, depends on the nature of the distribution at issue. Subsection (A) of that Section provides for an enhancement of at least five levels depending on the retail value of the material at issue where the distribution was "for pecuniary gain." Subsection (B) similarly imposes a five-level enhancement where the distribution was "for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain." Subsection (C) provides for a five-level enhancement where the distribution was "to a minor." Subsection (D) requires a six-level enhancement for distribution intended to "persuade, induce, entice, or coerce" a minor to engage in illegal activity, except where that illegal activity constitutes "prohibited sexual conduct," which is subject to a seven-level enhancement under Subsection (E). Finally, if the offense conduct involved distribution not described in Subsections (A) through (E), Subsection (F) provides for a two-level enhancement. The PSR recommended this two-level enhancement under Section 2G2.2(b)(3)(F).

imprisonment, the Probation Office found that the Guidelines counseled a term of imprisonment of 97 to 120 months.

The PSR also detailed Bennett's difficult upbringing. His father physically abused his mother and frequently took Bennett, from about the age of five, to brothels, strip clubs and sex shops in Baltimore. Although Bennett's mother left his father when Bennett was five years old, Bennett continued to see his father after the divorce. This typically occurred while his father was in the company of women or consuming alcohol. Moreover, when he was seven years old, Bennett was sexually molested by a 15-year-old male babysitter. These experiences led him to be focused on (and engage in) sexual behavior from an extremely early age. Such behavior continued throughout high school and college.

After finishing law school, during a period of depression, he began to use GigaTribe to view a broad range of pornography, including bestiality, group sex, and child pornography. On this basis, Bennett's psychiatric expert concluded that his interest in child pornography was not a product of a real predilection for minors but rather was "borne out of his own experiences with childhood sexual behavior and represents an unresolved psychological matter that can be addressed through psychotherapy." PSR ¶ 71.

Despite this troubled—and, specifically, *sexually* troubled—background, Bennett was tremendously successful. After high school, Bennett attended Morehouse College, from which he graduated as valedictorian. He then went to the Harvard Law School, graduating in 2010 as a Class Marshal. Bennett was, however, unable to find a legal job after graduating from law school and became severely depressed as a result. He briefly sought treatment at Harlem Hospital, where he was diagnosed with depression and bipolar disorder with manic depression and schizophrenia and was prescribed Seroquel for insomnia.

Bennett did find a job as an adjunct professor of criminal justice at ASA College in Brooklyn, where he worked from early 2011 until late 2013. He then began work as a substitute and adjunct professor at Borough of Manhattan Community College. This job continued until his sentencing.

The PSR ultimately recommended a Guidelines sentence of 97 months' imprisonment. This was based, in part, on skepticism toward the conclusions of Bennett's psychiatric expert that Bennett was not sexually attracted to minors and should not be diagnosed with pedophilia. The recommendation also demonstrated the "serious concerns [of the Probation Office] about [Bennett's] risk to re-offend and his ability to be safely managed in the community." *Id.* at 23.

**The Sentencing Submissions.** On December 5, 2014, Bennett submitted a sentencing letter that requested a sentence of three years' probation. The submission argued that this sentence was appropriate given (1) Bennett's unusual promise and success, especially in light of his childhood, (2) Bennett's traumatic sexual history, which suggested that Bennett did not pose any danger to the community, and (3) Bennett's abstention from viewing child pornography after his computer had been seized by agents in February 2013. On this basis, Bennett, and the expert who supported his submission, argued that he was "an excellent candidate for supervision, treatment and rehabilitation." App. 108. Bennett did not challenge the PSR's calculation of his Guidelines range.

On December 12, 2014, the Government, in its own sentencing submission, agreed that a below-Guidelines sentence was appropriate for essentially the same reasons advanced by Bennett, but asked for a "significant incarceratory sentence" given the seriousness of the offense conduct. App. 185. Moreover, as to the calculation of the Guidelines range, the

Government argued that a five-level enhancement under U.S.S.G. § 2G2.2(b)(3)(B), instead of the two-level enhancement under U.S.S.G. § 2G2.2(b)(3)(F), applied. This was because distribution "for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain," instead of simple distribution, was involved. The more significant enhancement was appropriate, the Government contended, because Bennett "gave his password to others in anticipation of receiving their passwords in turn, [so] that Bennett could gain access to other user's . . . shared folders and the child pornography contained therein." App. 195.

**The Sentencing.** Bennett was sentenced by the District Court on December 19, 2014. After summarizing the materials received and confirming that there were no objections to the facts presented in the PSR, the District Court turned to the calculation of the Guidelines range. In particular, the District Court found that Bennett's interactions with users on the site—where there was an "exchange of passwords, after a brief exchange as to the interests of the users," App. 231—warranted the imposition of the five-level enhancement under U.S.S.G. § 2G2.2(b)(3)(B). This resulted in a total offense level of 33 and, based on this, the District Court found:

> There's no dispute that Mr. Bennett is in Criminal History Category I, so according to the guidelines, the range is 135 to 168. That's about 11 years to 14 years or so. So 11 to 14 years, which is a long time.

App. 232.

After hearing argument from Bennett and the Government, the District Court went on to impose sentence:

9

The maximum here is ten, the guidelines are 11 to 14. I'm not moved by that. I think it's worth noting just because I'm required to note it, but from the moment I read the facts of this case, it seemed to me that eight to ten is not inappropriate, 11 to 14 is not inappropriate. It's not that I'm callous, it's not that I have no sense as to what that time means to a young man like you who has so much promise, but it's that the penalty has to send a message of moral outrage and a message of conviction that children matter.

So, look, I have to credit the goodness in you. The fact that I don't think you're a predator, you are distinguishable from many other defendants who are charged with crimes like this, I'm prepared to come down below the guidelines, down below the statutory maximum of ten, which would be within the guidelines range, but it seems to me that a sentence of seven years is as low as I can go without insulting the victims in this crime.

App. 281. The District Court then imposed a sentence of seven years' incarceration, to be followed by five years of supervised release. The District Court also ordered special assessment of $100.

Bennett appealed.

**DISCUSSION**

Bennett's principal contention on appeal is that the District Court erred in applying a five-level enhancement for distribution "for the receipt, or expectation of receipt, of a thing of value" under U.S.S.G. § 2G2.2(b)(3)(B). We ultimately conclude that this enhancement was warranted in Bennett's case. But we also hold that the District Court incorrectly calculated the applicable Guidelines range by failing to recognize that the Guidelines range was reduced to the statutory maximum under U.S.S.G. § 5G1.1(a).

**A.**

We review sentences using a "deferential abuse-of-discretion standard." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (internal quotation marks omitted). This review has both procedural and substantive components. *Id.* First, we scrutinize

whether the District Court has committed "significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence . . . ." *Gall v. United States*, 552 U.S. 38, 51 (2007). An error applying the Guidelines is a legal error and, as a result, is reviewed *de novo*. *United States v. Broxmeyer*, 699 F.3d 265, 281 (2d. Cir 2012). Then, if there are no such procedural errors, we proceed to assess whether the sentence was substantively reasonable. *Gall*, 552 U.S. at 51.

Bennett did not challenge the calculation of the Guidelines range under U.S.S.G. § 5G1.1(a) at the District Court. Accordingly, we review any such challenges for plain error. *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016). This requires there to be (1) an error, (2) that is "plain—that is to say, clear or obvious," and (3) which affected "substantial rights." *Id.* In turn, for an error to affect substantial rights, there must be "a reasonable probability that, but for the error, the outcome of the proceeding would be different." *Id.*(internal quotation marks omitted). We then exercise our discretion to correct the error if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted). That said, the plain-error standard is applied less "stringently in the sentencing context, where the cost of correcting an unpreserved error is not as great as in the trial context." *United States v. Gamez*, 577 F.3d 394, 397 (2d Cir. 2009) (per curiam).

**B.**

Bennett contends that the District Court erred in applying the five-level increase under U.S.S.G. § 2G2.2(b)(3)(B) because Bennett's conduct did not amount to anything "more than simple fire sharing," and therefore did not constitute "any particular exchange." Appellant's Br. 32. We disagree.

Section 2G2.2(b)(3)(B) requires the application of a five-level increase if a defendant's offense involved "[d]istribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain." Application Note 1 to that Guideline clarifies that this type of distribution encompasses "any transaction, including bartering or other in-kind transaction, that is conducted for a thing of value, but not for profit." U.S.S.G. § 2G2.2 cmt. n.1. The Note defines a "thing of value," in turn, as "anything of valuable consideration," including "child pornographic material received in exchange for other child pornographic material bartered in consideration for the material received." *Id.*

If a defendant's conduct involves distribution *not* for the "receipt, or expectation of receipt, of a thing of value," and does not otherwise implicate any of the other forms of aggravated distribution enumerated in U.S.S.G. § 2G2.2(b)(3)(A), (C), (D), or (E), a two-level increase is applied for simple distribution under U.S.S.G. § 2G2.2(b)(3)(F). The Government does not contend that Bennett's conduct implicates any of these other forms of aggravated distribution. Accordingly, the question before us is whether Bennett's use of file-sharing software involves "distribution for the receipt, or expectation of receipt, of" other child pornography. If so, the District Court correctly applied a five-level increase; if not, a two-level increase was appropriate.

12

We have not addressed whether the use of file-sharing technology can trigger the enhancement under Section 2G2.2(b)(3)(B), and if so, in what circumstances it is triggered.[3] The Fifth and Eighth Circuits have held that an agreement to distribute child pornography in exchange for other child pornography is inherent in the knowing use of file-sharing programs to obtain and make available child pornography. *United States v. Groce*, 784 F.3d 291, 294–95 (5th Cir. 2015); *United States v. Griffin*, 482 F.3d 1008, 1012–13 (8th Cir. 2007) ("We now hold that § 2G2.2(b)(2)(B)'s five-level enhancement . . . applies to a defendant who downloads and shares child pornography files via an internet peer-to-peer file-sharing network, as these networks exist . . . for users to share, swap, barter, or trade files between one another.").[4] Other Circuits have rejected such a *per se* rule, and instead have looked to the defendant's particular use of file sharing to determine whether an expectation of receipt existed. *United States v. Hernandez*, 795 F.3d 1159, 1165 (9th Cir. 2015); *United States v.*

---

[3] We have, however, previously held that file sharing can constitute simple distribution under U.S.S.G. § 2G2.2(b)(3)(F). *United States v. Reingold*, 731 F.3d 204, 228–30 (2d Cir. 2013). There, we found that the lesser enhancement was appropriate given that the defendant "knew from the start that distribution was a necessary condition of receipt" and that, "with that knowledge, [defendant] took deliberate and purposeful actions to effect that distribution." *Id.* at 229.

[4] The Eighth Circuit has subsequently clarified that "whether a defendant qualifies for the [Section 2G2.2(b)(3)(B)] enhancement must be decided on a case-by-case basis," but that this could be established through evidence of defendant's knowledge of "how [file sharing] worked." *United States v. Stults*, 575 F.3d 834, 849 (8th Cir. 2009); *see also United States v. Durham*, 618 F.3d 921, 925–26 (8th Cir. 2010).

*McManus*, 734 F.3d 315, 320 (4th Cir. 2013); *United States v. Spriggs*, 666 F.3d 1284, 1288 (11th Cir. 2012); *United States v. Geiner*, 498 F.3d 1104, 1111 (10th Cir. 2007).

We decline to adopt the reasoning of those courts that have found that any use of file sharing triggers the five-level enhancement. Some individuals undoubtedly use file-sharing software to engage in exchanges of illicit pornographic material. *Cf. Groce*, 784 F.3d at 294 ("By using this software as Groce has, the user agrees to distribute the child pornography on his computer in exchange for additional child pornography."). But individuals need not utilize file sharing as a bargaining platform. Indeed, as the Eleventh Circuit has recognized, "[f]ile-sharing programs exist to promote free access to information" and "[g]enerally . . . do not operate as a forum for bartering." *Spriggs*, 666 F.3d at 1288. And, as a technological matter, file-sharing programs facilitate either approach; individuals may or may not restrict access to their files through password protection and, even if they do maintain a password, nothing restrains them from making their password generally available as a gift as opposed to as consideration in an exchange.

That many, or perhaps even most, GigaTribe users interact with this service in one way does not imply that other uses should be ignored in evaluating the applicability of the enhancement. Thus, "[a]lthough a defendant *may* share files on a file-sharing network with the expectation of receiving other users' files in return, this is not necessarily true in every case." *Hernandez*, 795 F.3d at 1165 (quoting *Geiner*, 498 F.3d at 1111).

Nevertheless, we conclude that Bennett's conduct in the case before us warrants application of the Section 2G2.2(b)(3)(B) enhancement. We have previously held that, to show an exchange, the evidence need not demonstrate a "specific agreement or

14

understanding between the distributor and the recipient of child pornography." *United States v. Maneri*, 353 F.3d 165, 168 (2d Cir. 2003). Instead, we have stated that evidence of an "expect[ation]—rather than just [a] hope[]—to receive a thing of value," including child pornography, suffices. *Id*. Other courts have adopted this logic. For instance, in *Hernandez*, the Ninth Circuit concluded that such an expectation was supported by evidence of a conversation in which defendant complained that an undercover officer was "leeching" him by failing to provide defendant with reciprocal access to pornography. 795 F.3d at 1166.

Accordingly, for the enhancement to apply, the Government must advance specific, individualized evidence that Bennett provided access to his collection of child pornography to another user with the expectation that that user would provide similar access to other child-pornography files. That standard is plainly met here.

Bennett repeatedly engaged in "pass-for-pass" exchanges, in which he provided his password to another user with the expectation of receiving the other user's password. Indeed, in one exchange (relied upon by the District Court) Bennett and another user expressly discussed their pornography preferences before agreeing to provide each other access to their child-pornography files. Then, upon having trouble downloading the other user's pornography, Bennett complained of not having received his bargained-for material. And, we agree with the District Court that "[t]his exchange of passwords, after a brief exchange as to the interests of the users, would seem to be exactly what [Section 2G2.2(b)(3)(B) cmt. n.1] has in mind." App. 231. Moreover, although the discussions surrounding Bennett's other exchanges were perhaps not as fulsome, each nevertheless constituted a separate *quid pro quo*—I'll give you my password (and therefore access to my child pornography) if you give me yours—that was understood by Bennett to involve an

15

exchange of child pornography and carried out as such. Thus, Bennett, in carrying out each of these exchanges, did expect to receive access to these individuals' child pornography files in exchange for his own files.

We conclude that the District Court properly applied a five-level enhancement for distribution for "the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain" under Section 2G2.2(b)(3)(B).[5]

---

[5] Bennett contends that the District Court committed procedural error in two other ways. But neither argument has merit.

First, Bennett argues that the District Court "disagreed with *Dorvee*[] . . . and refused to follow it" in sentencing him to seven years' imprisonment. Reply Br. 10. Bennett's argument here, however, boils down to an assertion that his sentence was simply too long for an offender who is "not a pedophile and is unlikely to reoffend, and who holds an advanced education with unusual promise for the future . . . ." *Id*. 6. Whether or not this is true, however, Bennett's claim essentially is that his sentence is substantively unreasonable in light of *Dorvee*, a claim that we do not reach for reasons mentioned in footnote 9, *infra*.

Second, Bennett claims that the District Court erred by taking into consideration the fact that Bennett's offense conduct could have supported a charge under 18 U.S.C. § 2552A(a)(2), which would have been subject to a mandatory minimum of five years. But, as we have recognized, "[t]he sentencing court's discretion is largely unlimited . . . as to the kind of information it may consider," and it is "free to consider . . . evidence of uncharged crimes, dropped counts of an indictment and criminal activity resulting in acquittal in determining sentence." *United States v. Gomez*, 580 F.3d 94, 105 (2d Cir. 2009) (quoting

16

**C.**

The District Court, however, erred in calculating Bennett's Guidelines range in another respect. It failed to take into account the effect of the statutory maximum on the Guidelines as required by U.S.S.G. § 5G1.1(a).[6]

U.S.S.G. § 5G1.1(a) expressly provides that "[w]here the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence." Thus, in *United States v. Dorvee*, 616 F.3d 174, 181 (2d Cir. 2010), we held that it was plain error for a district court to calculate a Guidelines range to be 262 to 327 months' imprisonment where the statutory maximum of the underlying offense was 240 months' imprisonment. Because the district court there "twice stated that the operative Guidelines range was 262 to 327

---

*United States v. Sisti*, 91 F.3d 305, 312 (2d Cir. 1996)). That Bennett could have been charged with a more serious crime constitutes data similar to this sort of information. Moreover, while Bennett contends that the District Court wanted to compensate for Bennett's having "got[ten] a break" from the Government, Reply Br. 11, there is no basis for concluding this. Rather, the District Court raised this point in connection with Bennett's counsel's argument that his offense conduct was not that serious.

[6] Because this argument was not raised below, it is subject to plain-error review. Additionally, Bennett first made it during oral argument. We nevertheless exercise our discretion to consider it. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011). We do so for reasons of judicial economy, as it could be raised in a collateral proceeding as part of an ineffective-assistance-of-counsel claim.

17

months" and "never correctly stated that the operative Guidelines range was 240 months' imprisonment, either by indicating the Guidelines range on the record at sentencing or by adopting at sentencing the PSR's statement of the applicable Guidelines range," it "failed to apply section 5G1.1(a) correctly." *Id.* Because of this error, it "plainly erred in its Guidelines calculation." *Id.*

Here, the District Court made the same error. In calculating the Guidelines range, it specifically stated that "the range is 135 to 168. That's about 11 years to 14 years or so. So 11 to 14 years, which is a long time." App. 232. It then continued to make reference to the Guidelines range as being 11 to 14 years' imprisonment. App. 281 ("The maximum here is ten, the guidelines are 11 to 14. . . . [F]rom the moment I read the facts of this case, it seemed to me that eight to ten is not inappropriate, 11 to 14 is not inappropriate."). The District Court never corrected this error by indicating that the statutory maximum and the Guidelines range (both the minimum and the maximum) *were the same*: ten years. Accordingly, the District Court plainly erred in its calculation of the Guidelines range.[7]

---

[7] At oral argument, the Government argued that the following statement by the District Court indicated that it correctly calculated the Guidelines sentence to be 10 years' imprisonment:

> I'm prepared to come down below the guidelines, *down below the statutory maximum of ten, which would be within the guidelines range* . . . .

Moreover, the District Court's error affected Bennett's substantial rights. As the Supreme Court recently recognized, "[i]n most cases a defendant who has shown that the district court mistakenly deemed applicable an incorrect, higher Guidelines range has demonstrated a reasonable probability of a different outcome." *Molina-Martinez*, 136 S. Ct. at 1346. This is because the "Guidelines are not only the starting point for most federal sentencing proceedings but also the lodestar." *Id.* Indeed, "[e]ven if the sentencing judge sees a reason to vary from the Guidelines, if the judge uses the sentencing range as the beginning point to explain the decision to deviate from it, *then the Guidelines are in a real sense the basis for the sentence*." *Id.* at 1345 (emphasis in original) (internal quotation marks omitted); *see also Dorvee*, 616 F.3d at 181 (finding that miscalculation of Guidelines affected substantial rights where the "district court continued to treat [the miscalculated range] as though it were the benchmark for any variance").[8]

---

Oral Arg. Recording at 1:39:30–:48:00 (quoting App. 281 (emphasis added)). The Government contends that the clause "which would be within the guidelines range" should be read to equate the Guidelines range and the statutory maximum. This interpretation of the statement, however, is dubious. The statutory maximum would not be *within* the Guidelines "range" if the District Court had calculated the Guidelines sentence correctly. That maximum would *be* the Guidelines.

[8] This conclusion, moreover, accords with contemporary research on judicial decision making, which indicates that anchoring and other "contextual factors" can affect the exact sentence imposed. *See* Jeffrey J. Rachlinski, Andrew J. Wistrich & Chris Guthrie,

19

Here, the miscalculated Guidelines range may well have anchored the District Court's thinking as to what an appropriate sentence would be. Thus, even though the District Court asserted it was "not moved by" the Guidelines, it returned multiple times to the "11 to 14" range in framing its choice of a seven-year below-Guidelines sentence. App. 281. And, to the extent that the District Court concluded that this sentence was necessary "to send a message of moral outrage," *id.*, the strength of such a message is necessarily reflective of the Guidelines range, which, itself, "is based on the seriousness of a defendant's offense," *Molina-Martinez*, 136 S.Ct. at 1342.

In these circumstances, and given the less stringent application of the plain-error standard in sentencing, *Gamez*, 577 F.3d at 397, we hold that the District Court's error affected Bennett's substantial rights and seriously affected the fairness of the judicial proceedings. *See Molina-Martinez*, 136 S. Ct. at 1343. Bennett therefore has met the requirements of plain error review.[9]

---

*Can Judges Make Reliable Numeric Judgments? Distorted Damages and Skewed Sentences*, 90 Ind. L. J. 695, 706 (2015).

[9] Because we conclude that the District Court committed procedural error in imposing Bennett's original sentence, we do not proceed to review the sentence for substantive reasonableness. *See Cavera*, 550 F.3d at 190. In doing this we emphasize that we are taking no position, at this time, on Bennett's substantive *Dorvee* contention.

# CONCLUSION

The District Court properly applied the five-level enhancement under U.S.S.G. § 2G2.2(b)(3)(B), but miscalculated the Guidelines sentence applicable to Bennett's conduct because it referenced a Guidelines range above the statutory maximum sentence. That miscalculation affected Bennett's substantial rights. Accordingly, we VACATE and REMAND for resentencing.