13-2486(L)
*United States v. Smith*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of March, two thousand seventeen.

PRESENT:
> PIERRE N. LEVAL,
> GUIDO CALABRESI,
> SUSAN L. CARNEY,
> > *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                      Nos. 13-2486(L)
>                                                              13-3338
AMAR SCOTT, AKA "A", JOHN SIMMONS, JERRICK          13-3640
DENSON, AKA "D", ISAIAH WOODS, AKA "Izzy",           14-1073
LAMAR SIMMONS, AKA "Lil Daddy", JAVONNE              15-4155
JACKSON, AKA "Von", AKA "Dutch", DEREK TAYLOR,
AKA "Swiff", MICHAEL WALKER, AKA "Awol",
JEFFREY DENSON, AKA "Jeff", AKA "Blue", MARCUS
JOHNSON, AKA "Miggs", MARVIN SIMMONS, AKA "Jr",
AKA "Junior", CAMERON CHARLES, AKA "Cam",
TRAVIS HOUNSHELL, AKA "Trav", MICHAEL NESMITH,
JEREMIAH NETTLES, JOSEPH LOVING, HARRY
NESMITH, LYNNARD DAVIS, LYNNARD DAVIS, JANICE
SNIPES, JAY JAYQUAN WYNNE, AKA Jayquan Gerod

Wynne, AKA "Tipsy", TEVON HAYMON, BRANDON
WHEELER, AKA "Weed",

        *Defendants*,

DEARICK SMITH, AKA "Ace", AKA "Lil D", RUSSELL
HAMPTON, AKA "TJ", YULANDER GREEN, AKA "L",
AKA "Lander", MICHAEL JACKSON, AKA "Boosum",
AKA "Boots",

        *Defendants-Appellants.*

_____

FOR APPELLANT SMITH:        DANIEL M. PEREZ, Law Offices of Daniel M. Perez, Newton, NJ.

FOR APPELLANT HAMPTON:        TINA SCHNEIDER, Law Offices of Tina Schneider, Portland, ME.

FOR APPELLANT GREEN:        James Branden, Law Office of James Branden, New York, NY.

FOR APPELLANT JACKSON:        JEFFREY WICKS, Jeffrey Wicks, PLLC, Rochester, NY.

FOR APPELLEE:        MONICA J. RICHARDS, Assistant United States Attorney, *for* William J. Hochul, Jr., United States Attorney for the Western District of New York, Buffalo, NY.

    Appeal from judgments of the United States District Court for the Western District of New York (Siragusa, *J.*).

    **UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the District Court's March 25, 2014 judgment of conviction as to Michael Jackson and June 24, 2013 judgment of conviction as to Dearick Smith are **AFFIRMED**; the appeal of Yulander Green challenging the District Court's May 31, 2013 judgment of conviction and sentence is **DISMISSED**; and the District Court's August 28, 2013 judgment as to Russell Hampton is **AFFIRMED** in part (as to the

conviction) and **VACATED** in part (as to the sentence), and the case is **REMANDED** for resentencing.

In 2011, Defendants-Appellants Dearick Smith, Michael Jackson, and Russell Hampton were tried by a jury for crimes alleged to have been committed by each during the period from 2006 through early 2009, as members of the violent Chain Gang (also known as the Wolfpack street gang), which was then operating in Rochester, New York. The jury found each guilty of RICO conspiracy, in violation of 18 U.S.C. § 1962(d); knowingly and unlawfully possessing a firearm in furtherance of that RICO conspiracy, in violation of 18 U.S.C. § 924(c); and conspiracy to distribute narcotics, in violation of 21 U.S.C. § 846. The jury also found Smith and Jackson guilty of knowingly and unlawfully possessing a firearm in furtherance of the narcotics conspiracy, in violation of 18 U.S.C. § 924(c), but acquitted Hampton of that charge. Defendant-Appellant Yulander Green—also a member of the Chain Gang during the relevant time period—pleaded guilty to a RICO conspiracy charge, and, as a cooperating witness, testified against Smith, Jackson, and Hampton at trial. In 2013, Smith was sentenced principally to 50 years' imprisonment; Jackson, to 55 years; Hampton, to 30 years; and Green, to 11 years and three months. All defendants appeal their convictions. In addition, Hampton challenges his sentence. We assume the parties' familiarity with the underlying facts and the procedural history of this case, to which we refer only as necessary to explain our decision.

1.    The Juvenile Delinquency Act

Smith, Jackson, and Hampton first argue that the federal Juvenile Delinquency Act ("JDA" or "the Act"), 18 U.S.C. §§ 5031–42, divested the District Court of jurisdiction over their prosecutions for the charged RICO and narcotics conspiracies.[1] They argue primarily that the jury (and not the court) should have decided whether, under the Act, the District Court had the factual basis needed to exercise jurisdiction over these charges against them. Accordingly, they argue that the District Court erred in failing to instruct the jury on the JDA's requirements and to request its specific determination of the relevant facts. They also

---

[1] Smith, Jackson, and Hampton each joined one another's additional arguments to the extent that those arguments did not conflict with his own. All three make this jurisdictional challenge.

argue that—even if no jury determination is required—the judge erred in failing separately to consider its jurisdiction over the charges against them for gun possession in furtherance of the RICO and narcotics conspiracies, from its jurisdiction over the conspiracy charges.[2] Alternatively, they urge us to overturn our precedent interpreting the JDA, *United States v. Wong*, 40 F.3d 1347 (2d Cir. 1994), in which we affirmed a district court's exercise of jurisdiction "over a defendant upon a threshold demonstration of post-[age] eighteen conspiracy activity," *id.* at 1366 (internal citations and quotations omitted) (emphasis added). No defendant, however, raised these issues in the District Court until his post-verdict Rule 29 motion. Each accordingly acknowledges that we review the District Court's failure to instruct the jury on this issue for plain error only—that is, (1) error, (2) that is plain, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Johnson v. United States*, 520 U.S. 461, 467 (1997).

The JDA governs the federal prosecution of a defendant who is indicted before he reaches the age of twenty-one and who is accused of having committed federal crimes before the age of eighteen. *See United States v. Ramirez*, 297 F.3d 185, 190 (2d Cir. 2002). It generally denies the federal courts jurisdiction over such a prosecution absent certification by the U.S. Attorney General that certain conditions obtain. (These include, for example, that the "appropriate court of a State does not have jurisdiction.") *See* 18 U.S.C. § 5032. Typically, therefore, for such defendants, "[c]ertification is a prerequisite to the exercise of federal jurisdiction." *Wong,* 40 F. 3d at 1363.

In *Wong,* however, we interpreted the JDA to permit federal prosecution of such a defendant for certain continuing crimes, even without the Attorney General's certification, when the charged crime began before the defendant reached the age of eighteen and he

---

[2] In response to Smith, Jackson, and Hampton's post-verdict Rule 29 motions challenging for the first time JDA jurisdiction over the conspiracies, the court ruled: "[T]he government cited several examples within the trial transcripts, which they provided, of post-18 conspir[ator]ial activity on the part of the defendants. Consequently the court finds viewing the evidence in a light most favorable to the government that the government has clearly made the threshold demonstration of post-18 conspiracy activity required by Wong and that consequently Defendant[s]' motion for judgment of acquittal based on lack of subject matter jurisdiction must necessarily be denied." App. 221-22.

4

affirmatively continued his participation after his eighteenth birthday. *See id.* at 1365.[3] The *Wong* court relied on the jury's findings to satisfy the requirement, but we did not there hold that a jury determination was required.[4] *See id.*

Even were we now inclined to require such a specific jury determination, however, defendants' challenges to their convictions on this ground fail because none of them demonstrate that the court's error in not seeking that express determination affected substantial rights, as required on plain error review. At trial, the government offered evidence that Smith, Jackson, and Hampton each participated in both the RICO and narcotics conspiracies charges after reaching the age of majority. The evidence showed that Smith, after reaching his eighteenth birthday, fled during a traffic stop from a car driven by another gang member and containing a gun—an incident that resulted in his guilty plea to a charge of gun possession. Witnesses also testified to having seen multiple guns accessible to the occupants of and visitors to a drug house that was controlled by Jackson and Hampton, and where both cooked drugs with other gang members, after each reached age eighteen. In light of this uncontroverted evidence of post-majority participation and defendants' failure to timely raise an objection to JDA jurisdiction, we find no plain error.[5]

The same record evidence supports our rejection of Smith, Jackson, and Hampton's second argument: that the District Court erred in failing to determine separately whether it had jurisdiction under the JDA over the two § 924(c) charges—one, with respect to the

---

[3] Other circuits have interpreted the Act similarly in this regard. *See United States v. Camez*, 839 F.3d 871, 874 (9th Cir. 2016) ("In these circumstances, courts uniformly have held that adult prosecution is warranted.").

[4] The Courts of Appeals are split as to whether a jury must evaluate whether the government has made the requisite threshold demonstration. *Compare United States v. Delatorre*, 157 F.3d 1205, 1209 (10th Cir. 1998) (requiring a jury finding); *United States v. Welch*, 15 F.3d 1202, 1211 (1st Cir. 1993) (same), *with United States v. Doerr*, 886 F.2d 944, 969 (7th Cir. 1989) (allowing district court to evaluate proof of threshold demonstration); *United States v. Cruz*, 805 F.2d 1464, 1475 (11th Cir. 1986) (same). *See also United States v. Harris*, 740 F.3d 956, 966 (5th Cir. 2014) (noting split and declining to decide issue).

[5] The Ninth Circuit, in dicta, interpreted our decision in *Wong* as permitting the government to satisfy the required threshold demonstration through no more than its allegations in the indictment. *See Camez*, 839 F.3d at 876. *Wong*, however, did not turn on the indictment's allegations. *See* 40 F.3d at 1366 ("Wong's conviction for conspiring to murder Carol Huang and Ngo's robbery and extortion convictions establish the requisite post-eighteen conduct to furnish the district court with jurisdiction."). Here, as in *Wong*, we rely on evidence of post-majority participation adduced at trial, and thus do not address the Ninth Circuit's reading.

RICO conspiracy, and the second, with respect to the narcotics conspiracy. As with defendants' first JDA argument, even were we to agree with defendants that the District Court erred, we do not believe that the error affected substantial rights. In our view, the evidence just described of Smith's post-majority gun possession—and, in the case of Jackson and Hampton, of their constructive possession of guns—sufficed also as the threshold demonstration required to proceed on the § 924(c) charges.[6] *Cf. United States v. Herrera*, 446 F.3d 283, 288 (2d Cir. 2006) (finding adequate, for purposes of sentencing enhancement, constructive possession based on evidence of "joint[] responsib[ility] for the stash houses and that each exercised personal dominion and control over the firearms in those locations"). Any error in the District Court's failure to consider separately the support for JDA jurisdiction over the two firearm offenses was therefore harmless as to each of these three defendants.

Finally, we decline defendants' invitation to reject our approach in *Wong*—that a district court has JDA jurisdiction over a RICO conspiracy when the government makes a threshold demonstration of post-eighteen conduct—in favor of defendants' proposed balancing test, under which the court would determine JDA jurisdiction by taking into account not only the defendant's age at the conclusion of the conspiracy but also the extent to which the overt acts giving rise to the RICO conspiracy charge were committed when the defendant was a juvenile. As a panel, we are not free to reject our Circuit's established rule. *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 327 (2d Cir. 2004) ("[O]ne panel of this Court cannot overrule a prior decision of another panel, unless there has been an intervening Supreme Court decision that casts doubt on our controlling precedent." (internal quotation marks omitted)).

---

[6] Possession of a firearm during and in relation to a conspiracy or other continuing crime is "itself is a continuing offense." *United States v. Payne*, 591 F.3d 46, 69 (2d Cir. 2010). Just as with the RICO and drug conspiracies charged here, therefore, even in the absence of certification by the U.S. Attorney General, these defendants could properly be prosecuted in federal court for the charged § 924(c) firearm offenses only if the government made a threshold demonstration that the defendants participated in the offenses after they each reached the age of eighteen. *See Wong*, 40 F.3d at 1366.

6

## 2. *Other Aspects of the § 924(c) Firearms Convictions*

Next, Smith, Jackson, and Hampton challenge their § 924(c) convictions for possessing a firearm during or in relation to the charged RICO conspiracy. Under 18 U.S.C. § 924(c)(1)(A), "any person who, during and in relation to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm" is guilty of a federal crime. A predicate act is a "crime of violence" under this provision, if it falls within one of two statutory definitions provided in 18 U.S.C. § 924(c)(3)(A) and (B), and set out in the margin. These are commonly referred to as the "force clause" and the "residual clause."[7]

These defendants argue that their convictions cannot stand under either clause. They claim first, that the residual clause is unconstitutional, and second, that RICO conspiracy is not a "crime of violence" within the ambit of the force clause. We readily reject the latter contention and, since that rejection is dispositive, we address that argument alone. Because these defendants did not make this argument before the District Court, we assess it for plain error. *See Johnson*, 520 U.S. at 467.

In our Circuit, a RICO offense is correctly treated as a "crime of violence" when at least two of the RICO predicates that are found by the jury to have been committed are themselves "crimes of violence." *See United States v. Ivezaj*, 568 F.3d 88, 96 (2d Cir. 2009). In addition, we treat conspiracy generally as a crime of violence if at least one of its objects is committing a crime of violence. *See, e.g.*, *United States v. Elder*, 88 F.3d 127, 129 (2d Cir. 1996) (per curiam).

The thrust of these defendants' argument is that, because the offense of RICO conspiracy does not require an overt act, it could be perpetrated without violence. RICO conspiracy, therefore, is not categorically a "crime of violence." This argument, however, runs counter to our decisions in *Ivezaj* and *Elder*. The jury here found that the government proved several RICO predicates, including defendants' conspiracy on two occasions to

---

[7] The statute provides: "For purposes of this subsection the term 'crime of violence' means an offense that is a felony and—(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another [the force clause], or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense [the residual clause]." 18 U.S.C. § 924(c)(3).

7

commit attempted murder in the second degree.[8] Attempted murder in the second degree is a crime unmistakably involving "an attempted use . . . of physical force" within § 924(c)(3)(A). Under the principles established in *Elder*, the conspiracy to commit that crime is itself a crime of violence. *See Elder*, 88 F.3d at 129. Where, as here, the jury finds two RICO predicates constituting crimes of violence have been proven, *Ivezaj* instructs us to treat the RICO offense as a crime of violence, and *Elder* instructs us to treat the conspiracy to commit that offense—that is, the RICO conspiracy charged here—as a crime of violence as well. *See Ivezaj*, 568 F.3d at 96; *Elder*, 88 F.3d at 129. We thus see no basis to disturb the defendants' § 924(c) convictions with respect to their RICO conspiracy.

### 3. *Jackson's Pro Se Challenges*

In a supplemental *pro se* brief, Jackson also challenges the District Court's failure to instruct the jury on manslaughter, which he maintains is a lesser included offense for the RICO predicate act of conspiracy to commit depraved indifference murder, for which the jury held him liable. Jackson's argument has no purchase: we have held that, when charged as a RICO predicate, state law murder "is not simply a federalized version of the state crime"; thus, "manslaughter is not a lesser included offense of RICO . . . murder under federal law," *United States v. Diaz*, 176 F.3d 52, 101 (2d Cir. 1999), and Jackson had no right to a jury charge adopting that theory.

Jackson also asserts that, contrary to RICO's relatedness requirements, the charged depraved indifference murder was not horizontally related to the other predicate acts that the jury found proven. Even supposing this to be so, Jackson's argument is unavailing because he does not challenge the relatedness of the remaining seven predicates that the jury found proven. Only two of these predicates need be horizontally related to each other for conviction. *See United States v. Jones*, 482 F.3d 60, 71 (2d Cir. 2006) ("[T]he submission to the jury of an alleged RICO predicate act that is legally insufficient is not a basis for reversal of the RICO conviction if we can determine beyond a reasonable doubt that the jury would

---

[8] Under New York law, a person is guilty of conspiracy to commit attempted murder in the second degree when, "with intent to cause the death of another," he agrees to "engage[] in conduct which tends to effect the" death of another. *See* N.Y. Penal Law §§ 125.25 and 110.00.

8

have convicted on the RICO count even if the insufficient ground had not been submitted to it.").

4.  *Green's Pro Se Challenge*

Yulander Green filed a *pro se* notice of appeal on November 25, 2013, and was then assigned counsel to assist with his appeal. In December 2013, his appellate counsel sought, pursuant to *Anders v. California*, 386 U.S. 738 (1967), to withdraw from the representation.[9] In October 2016, the government moved to dismiss Green's appeal as untimely and as barred by his plea agreement's waiver of his right to appeal.

This Court will uphold a waiver of appeal except in very limited circumstances. *See United States v. Gomez-Perez*, 215 F.3d 315, 319 (2d Cir. 2000). Neither Green nor his attorney has made any attempt to show that any of those circumstances is present or to explain why his waiver should not be enforced. We thus conclude that Green's waiver bars his appeal.

5.  *Hampton's Sentencing Challenge*

Finally, Hampton urges us to vacate his sentence.[10] As a preliminary matter, Hampton asserts—and the government agrees—that at his initial sentencing in August 2013, the government, defense counsel, the Probation Department, and accordingly, the District Court, miscalculated the Guidelines range applicable to Hampton's conviction for the charged RICO conspiracy and drug conspiracy. The range, then identified, reflected a shared error in determining his combined offense level under U.S.S.G. § 3D1.4.[11]  All agreed at the time that the applicable range for the conspiracy convictions was 324 to 405 months. The

---

[9] After the death of counsel initially assigned to the case, newly assigned counsel adopted the *Anders* brief prepared and submitted by his predecessor.

[10] This discussion focuses on Hampton's sentences for the conspiracy convictions alone. For his firearms convictions, as required by law, the District Court also sentenced Hampton to an additional sixty months' imprisonment, to run consecutively. *See* 18 U.S.C. § 924(c)(1)(A)(i). There is no dispute that this additional sixty-month period of incarceration was properly imposed.

[11] In calculating Hampton's combined offense level, the Probation Department correctly computed that Hampton's racketeering crimes amounted to five "units" under U.S.S.G. §§ 3D1.3 and 3D1.4, regarding "group[s] of closely related counts." It advised, however, that the five-unit tally corresponded to a five-level increase in Hampton's combined offense level. In fact, five units correspond to a four-level increase. *See* U.S.S.G. § 3D1.4.

9

correct range, however, as the government and Hampton now agree, was 292 to 365 months.

Hampton and the government disagree as to the import of the subsequent proceedings, however. After adopting the incorrect range in 2013, the District Court granted a variance from that range based on its evaluation of the § 3553(c) factors, and sentenced Hampton to 300 months' imprisonment on the conspiracy charges. Then, in 2015, still without realizing the earlier mistake, Hampton sought and the District Court granted a sentence reduction under 18 U.S.C. § 3582(c)(2), in light of Amendment 782 to the United States Sentencing Guidelines. At that time, with the error still embedded in its calculations, the court determined that Hampton was eligible for a reduction to a sentence for these offenses of between 292 to 365 months—as it happens, the range under which Hampton should have been sentenced for these offenses in the first instance. The District Court reduced Hampton's sentence from 300 months to 292 months, the bottom of the newly calculated Guidelines range. This eight-month reduction also represented the maximum reduction permitted under § 3582(c)(2), in light of the Supreme Court's decision in *Dillon v. United States*, 560 U.S. 817 (2010): *Dillon* held that, in a § 3582(c)(2) resentencing, the Guidelines do not permit district courts to impose a sentence below the newly applicable Guidelines range. *See id.* at 829.

Because Hampton challenges his 2015 sentence first as a part of this appeal, we review the District Court's ruling for plain error. *See United States v. Gamez*, 577 F.3d 394, 397 (2d Cir. 2009) (per curiam). We recognize, however, that this standard "should not be applied stringently in the sentencing context, where the cost of correcting an unpreserved error is not as great as in the trial context." *Id.*

The government acknowledges that the 2013 miscalculation of the Guidelines range constituted error that is plain. It argues, however, that because Hampton was sentenced under the correct range in 2015 when the District Court considered his § 3582(c)(2) motion, and the correct range would not have been eligible for any subsequent reduction under Amendment 782, the 2013 error did not affect Hampton's substantial rights, as it must to permit us to vacate and remand on plain error review.

10

We cannot agree. The Supreme Court has recently explained that "[i]n most cases a defendant who has shown that the district court mistakenly deemed applicable an incorrect, higher Guidelines range has demonstrated a reasonable probability [that the error affected his substantial rights]." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1346 (2016). We held as much in *United States v. Bennett* and found that the error constituted plain error. 839 F.3d 153, 163 (2d Cir. 2016), *as amended* (Oct. 7, 2016). Just as in *Bennett*, we see no reason to believe that the error here did not affect Hampton's substantial rights. At the 2015 resentencing, the District Court may have considered the Guidelines range under which Hampton should have been sentenced from the start, but the District Court was unable, in light of the Supreme Court's decision in *Dillon*, to impose sentence below that range. *See* 560 U.S. at 829. Yet at the 2013 sentencing, the District Court decided to vary downward from the (mistaken) range, citing the § 3553(a) factors in support of its decision. Whether the District Court will ultimately grant a variance below the correctly calculated Guidelines range, we do not know. But, in light of the initial error and the District Court's earlier variance, we think vacatur of the sentence and remand for *de novo* resentencing are required.

* * *

We have considered Defendants' remaining arguments and find them to be without merit. For the foregoing reasons, the District Court's March 25, 2014 judgment of conviction as to Michael Jackson appealed in No. 14-1073 and June 24, 2013 judgment of conviction as to Dearick Smith appealed in No. 13-2486 are **AFFIRMED**. The appeal of Yulander Green challenging the District Court's May 31, 2013 judgment of conviction appealed in No. 13-3640 is **DISMISSED**. The District Court's August 28, 2013 judgment as to the conviction and sentence of Russell Hampton appealed in Nos. 13-3338 and 15-4155 is **AFFIRMED** in part (as to the conviction), **VACATED** in part (as to the sentence), and his case is **REMANDED** for resentencing.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court

11